W. WEST ALLEN
Nevada Bar. No. 5566
wwa@h2law.com
JAY YOUNG
Nevada Bar No. 5562
jay@h2law.com
JASON P. WEILAND
Nevada Bar No. 12127
jweiland@h2law.com
HOWARD & HOWARD ATTORNEYS PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
Telephone: (702) 257-1483
Facsimile: (702) 567-1568

*Counsel for Plaintiffs*
*Octaform Systems Inc. and Octaform Inc.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| OCTAFORM SYSTEMS INC. and OCTAFORM INC, <br><br> Plaintiffs, <br><br> vs. <br><br> BRUCE JOHNSTON, ALBA LUCIA LOZANO HERNANDEZ JOHNSTON, JUN YU, CAROLINA DIAZ, and H-PAC PLASTICS, LLC, <br><br> Defendants. | CV- <br><br> **VERIFIED COMPLAINT** <br><br> **JURY DEMAND** |

Plaintiffs Octaform Systems Inc. ("Octaform Canada") and Octaform Inc. ("Octaform US") (collectively, "Octaform") complain of defendants, Bruce Johnston ("Johnston"), Alba Lucia Lozano Hernandez Johnston ("Lozano-Johnston"), Jun Yu ("Yu"), Carolina Diaz ("Diaz"), and H-PAC Plastics LLC ("H-PAC") (collectively the "Defendants") as follows:

**JURISDICTION AND VENUE**

1.     This is a claim for trade secret misappropriation in violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, the Nevada Trade Secrets Act, N.R.S. § 600A.010 et seq., and common law; false advertising under the Lanham Act, 15 U.S.C. § 1125; and related claims under Nevada law.

HOWARD & HOWARD ATTORNEYS PLLC

2.     The Court has jurisdiction over the subject matter of this complaint under 18 U.S.C. § 1836(b)(1), 15 U.S.C. § 1125(a), 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a).

3.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

4.     This Court may assert personal jurisdiction over the Defendants because, among other facts: (a) Johnston, Lozano-Johnston and Diaz reside in this District, operate a business in Nevada, and maintain substantial, continuous and systematic contacts with the State of Nevada; (b) Octaform's claims against H-PAC, a company headquartered in Nevada, arise out of H-PAC's misappropriation and use of Octaform's trade secrets and intellectual property in this District; (c) Yu is the manager of H-PAC, a Nevada company, and she participated in the commission of a tort in this District and directed her tortious conduct against Octaform in this District, including by collaborating with her family business in China to harm Octaform as described below; and (d) all of the Defendants have misappropriated Octaform's trade secrets and other intellectual property, and committed the tortious conduct complained of below in this District for their own personal benefit and the benefit of H-PAC and, as a direct result of Defendants' actions in this District, Octaform has been injured.

## INTRODUCTION

5.     This case involves a conspiracy between Defendants to unlawfully compete with Octaform and willfully and maliciously misappropriate Octaform's trade secrets for Defendants' own benefit.  Before leaving their employment with Octaform US, Defendants Johnston and Lozano-Johnston (former high-level employees of Octaform US) began a business relationship with Octaform's Chinese supplier (which misappropriated Octaform's trade secrets and other intellectual property).  Defendants Diaz (a former Octaform US employee) and Yu (the Chinese supplier's daughter) formed H-PAC, a Nevada company, in furtherance of Defendants' conspiracy.  H-PAC was formed immediately before Diaz was hired by Johnston to work for Octaform US.  Through H-PAC, which is operated by all Defendants and managed by Diaz and Yu on paper only, Octaform's Chinese supplier and Defendants are misappropriating Octaform's trade secrets and other intellectual property, usurping Octaform's business

opportunities and unfairly competing with Octaform at every level of the distribution chain—from initial production down to the sale of product to a customer. Defendants are using, selling or otherwise financially gaining from product knowingly derived through the misappropriation of Octaform's trade secrets and other intellectual property. This complaint seeks to stop Defendants' unlawful conduct.

## PARTIES

6.      Plaintiff Octaform Canada is a Canadian company that has for many years been engaged in the business of designing, manufacturing, and distributing inter-connectable PVC concrete forming systems and wall and ceiling liner systems used in agriculture, aquaculture and other commercial uses. For the past five years, Octaform Canada has operated a wholly owned United States subsidiary called Octaform Inc. ("Octaform US") headquartered in Las Vegas, Nevada. Octaform's products include the world-famous QuickLiner plastic panels which are installed to create interior or exterior walls and ceilings, as often used for commercial vehicle washes, food preparation facilities, commercial barns, industrial containers, and other commercial structures. Octaform's patented formwork creates a concrete-filled wall that protects against elements that can harm concrete and steel. Its QuickLiner is used in new or existing structures to clad walls and ceilings. These processes in turn improve the functionality and extend the life of the structures and walls.

7.      On information and belief, Defendant H-PAC is a Nevada Limited Liability Company with a principal place of business located at 6275 S. Pearl Street, Suite 500, Las Vegas, NV 89120. Defendants Diaz and Yu manage H-PAC according to filings with the Nevada Secretary of State; however, Defendants Johnston and Lozano-Johnston also control, manage and have financial interest in H-PAC. Upon information and belief, Defendants have either individually or in concert with others used H-PAC as a mere instrumentality to use, sell or otherwise financially gain from product knowingly derived through the misappropriation of Octaform's trade secrets and other intellectual property.

8.      On information and belief, Defendant Johnston is a citizen and resident of Nevada. Johnston was previously employed by Octaform US and held the high-level position of

HOWARD & HOWARD ATTORNEYS PLLC

General Manager and Sales Manager as the individual responsible for Octaform sales to North America, Europe and Asia. Upon information and belief, Johnston has a financial interest in, and is responsible for the actions of, Defendant H-PAC, and he individually or in concert with others, uses, sells or otherwise financially gains from product knowingly derived through the misappropriation of Octaform's trade secrets and other intellectual property.

9. On information and belief, Defendant Lozano-Johnston is a citizen and resident of Nevada. Lozano-Johnston is married to Johnston and was, until May 27, 2016, employed by Octaform US in the capacity of Warehouse/Logistics Coordinator, the position solely responsible within Octaform for fulfilling orders, shipping orders internationally and controlling inventory. Upon information and belief, Lozano-Johnston has a financial interest in, and is responsible for the actions of, Defendant H-PAC, and she individually or in concert with others, uses, sells or otherwise financially gains from product knowingly derived through the misappropriation of Octaform's trade secrets and other intellectual property.

10. On information and belief, Defendant Diaz is a resident of Nevada and is the Resident Agent and Manager of Defendant H-PAC. Diaz is a longtime close friend to Johnston and Lozano-Johnston and was hired by Defendant Johnston effective March 16, 2016 for the stated purpose of filling a vacancy in the accounting department of Octaform US, although she had no actual background or experience in accounting. Defendant Johnson later told Octaform personnel that the purpose for hiring Diaz was so she could "learn the business." Defendants Johnston and Lozano-Johnston educated Diaz on the business operations of Octaform. Upon information and belief, Diaz individually or in concert with others, uses, sells or otherwise financially gains from product knowingly derived through the misappropriation of Octaform's trade secrets and other intellectual property.

11. On information and belief, Defendant Yu is a citizen and resident of China and is a Manager of Defendant H-PAC. Yu is the daughter of non-party Rusen Wang ("Wang") who, as explained below, individually and through his Chinese company Huajun Plastic Building Material Co. Ltd. ("Huajun"), intentionally and willfully misappropriated vital Octaform trade secrets and conspired with Defendants to financially gain from the misappropriation of those

4

VERIFIED COMPLAINT AND JURY DEMAND

HOWARD & HOWARD ATTORNEYS PLLC

trade secrets.  Upon information and belief, Yu individually or in concert with others, uses, sells or otherwise financially gains from product knowingly derived through the misappropriation of Octaform's trade secrets and other intellectual property.

12.     Upon information and belief, there may be one or more other individuals and legal entities involved who consort together with these named parties as part and parcel of a common enterprise in which each plays a part in the misappropriation of Octaform's trade secrets and other intellectual property, and who may be proper parties in this proceeding. Should these individuals and legal entities be identified and subject to the jurisdiction of this Court, Plaintiff intends to amend its complaint accordingly.

### OCTAFORM RETAINS RUSEN WANG AND HIS CHINESE COMPANY

13.     In August 2011, Octaform Canada entered into a supply agreement with non-party Wang and his Chinese Company, Huajun, a manufacturer of plastic profile extrusions in China, to develop and manufacture plastic profile extrusion tools for Octaform in its business and sale of products to its customers in North America, Europe and Asia. *See* Exhibit A ("Supply Agreement").

14.     Wang is the President of Huajun and the Chairman of its Board of Directors.

15.     Prior to entering into the Supply Agreement with Octaform, Huajun and Wang made only brittle, plastic decorative panels for the Chinese market and never made industrial strength structural PVC panels.  Pursuant and subject to the terms of the Supply Agreement, Octaform provided Wang and Huajun directions and quality requirements for product, approved ingredients for product, and had all of the product made under its watchful eye to meet the exact characteristics and properties for the plastic used in Octaform products.  Octaform tested and adjusted for tensile strength, wall thickness and shatter resistance among many other details.

16.     Pursuant and subject to the terms of the Supply Agreement, Octaform agreed to pay for tooling and dies necessary for Huajun to manufacture goods for Octaform.

17.     For many years, Octaform paid for and developed the manufacturing process, research, learning, and adjustments to tools to make superior product.  Octaform used Wang and

HOWARD & HOWARD ATTORNEYS PLLC

Huajun for many years investing considerable time and resources to Octaform's business and, in particular, the development of Octaform's growing QuickLiner business.

18.     On multiple occasions, Octaform sent quality control experts and teachers of ISO certification to the Huajun plant in China at considerable expense to Octaform for the purposes of upgrading Huajun's knowledge and quality control procedures.

19.     Octaform always sent its confidential designs for its products to Wang and Huajun in China for purposes of manufacturing Octaform products.  All such designs were always expressly marked as proprietary to Octaform Canada and subject to confidentiality provisions.

20.     The Supply Agreement made clear that "[a]ny tools Octaform has paid for will be the property of Octaform." Supply Agreement at ¶ 1.1.

21.     Huajun also granted Octaform the "exclusive rights for the production from Octaform tooling" and agreed that Huajun "will at no time use any such tooling for any other production purposes other than as requested by Octaform." *Id.* at ¶ 20.0(A)(c).

22.     Huajun also agreed to consult with Octaform before altering or adjusting any dies.

23.     The Supply Agreement recognized that, "[i]f Octaform chooses to pay for the development cost for a new tool, Huajun agrees to release the tool to Octaform at no further expense to Octaform[.]" *Id.* at ¶ 20.0(B)(c).

24.     Importantly, the Supply Agreement required Huajun to maintain Octaform's information in strict confidence:

> Huajun agrees to maintain in strict confidence all information, which is disclosed by Octaform, including without limitation all technical and business data, drawings, software and know-how. Huajun shall only use such information for delivering the parts. Information or knowledge disclosed to Octaform shall (i) not be subject to confidentiality obligations unless expressly agreed by Octaform, and (ii) shall be free from restrictions as to use. This confidentiality obligation shall survive the termination of the PO and shall continue until Octaform will specify otherwise. Huajun shall not disclose Octaform's name or this contract without Octaform's prior written consent.

HOWARD & HOWARD ATTORNEYS PLLC

HOWARD & HOWARD ATTORNEYS PLLC

25.     Prior to entering into the Supply Agreement, when the parties were evaluating their business opportunities, Octaform Canada and Huajun also entered into a Mutual Confidentiality and Non-Disclosure Agreement.  Exhibit B ("Huajun NDA").

26.     Pursuant and subject to the terms of the Huajun NDA, Huajun agreed to retain in confidence and not to disclose Octaform's "information, materials, business plans, ideas, strategies, technical data or specifications, data, product research and/or development initiatives, works of authorship, prototypes, models, inventions (whether patentable or not), designs (whether registrable or not), trade secrets and other proprietary information (collectively called the "Information). . . ."  *Id.*  Specifically, "[e]ach Party agree[d] not to use, exploit or commercialize such Information disclosed by the other Party for its own benefit or for the benefit of any third parties."  *Id.*

27.     Huajun also agreed "not to file an application for a patent, design registration or any other intellectual property right relating to the Octaform stay-in place building/forming technology in any country, or assist others in doing so" and "not to manufacture, use or sell the Octaform stay-in-place building/forming technology, any part of it, or any other thing based on or incorporating the ideas and concepts disclosed to [Huajun] by Octaform and/or any of its agents, employees and/or representatives, without Octaform's prior written consent."  *Id.*

## JOHNSTON'S EMPLOYMENT WITH OCTAFORM US

28.     On July 27, 2012, Johnston entered into an Employment Agreement with Octaform US as its "Regional Sales Manager" for the "Western part of the United States." Exhibit C ("Johnston Employment Agreement").

29.     Pursuant to the Johnston Employment Agreement, Johnston agreed to "well and faithfully serve the Company and use [his] best efforts to promote the Business of the Company. You [Johnston] will act honestly and in good faith in the best interests of the Company."  *Id.*

30.     Johnston further agreed, among other things, (a) to only engage in Octaform business; (b) not to seek business for his own personal benefit; (c) to communicate and channel all business opportunities to Octaform; (d) not to disclose Octaform's confidential and proprietary information and to keep such information in strictest confidence and trust; and (e)

7

not to compete with Octaform "directly or indirectly" in any competitive business in Canada or the United States for a period of six months or solicit Octaform's clients for a period of one year after the termination of his employment with Octaform.

31.    Because Johnston held a high-level position with Octaform, Johnston also executed a Proprietary Rights and Non-Disclosure Agreement.  Exhibit D ("Johnston NDA").

32.    Pursuant and subject to the terms of the Johnston NDA, Johnson recognized that he "has, will have, or may have access to certain information pertaining to the technical, financial and marketing aspects of the business of Octaform all of which constitutes confidential and proprietary information. . . ." *Id.*  This information included some or all of the following:

- technical information about research, development, products, manufacturing, inventions, designs, prototypes, techniques, processes, trade secrets, know-how, algorithms, programs, code, schematics and source documents;

- historic, current and projected financial information about sales, other revenues, costs, margins, expenses, profits or losses, taxes, income, assets, liabilities, shareholders' equity, and cash flow; and

- marketing information about trademarks and names, product descriptions, customers, suppliers, markets, marketing and distribution channels;

33.    Johnston acknowledged "that all such Business Information is valuable and proprietary or confidential to Octaform and agree[d] . . . not [to] disclose the Business Information for any purpose other than purposes expressly authorized by Octaform." *Id.*  He further agreed that all intellectual property "worked on or developed by Bruce Johnston in the course of his work for Octaform will belong exclusively to Octaform." *Id.*

34.    During his employment with Octaform US, Johnston's job responsibilities required him to work in the best interests of Octaform and included, but were not limited to, developing effective sales strategies and executing on such plans; developing product competency and knowledge to handle any product inquiries arising from Octaform's website, tradeshows, or corporate marketing activities; assessing Octaform's active accounts and sales leads with a view to improving efficiency and maximizing Octaform's opportunity in existing markets; performing the formal sales quotation process and estimating and providing quotes to prospective customers; maintaining customer records and profiles; performing weekly update reports; networking with owners, distributors, engineers, builders, and contractors to promote

HOWARD & HOWARD ATTORNEYS PLLC

1 sales; adhering to Octaform's commitment to provide excellent customer service at all times;

2 proactively targeting, recruiting, and replacing distributors and developing the network of

3 distributors in coordination with sales efforts in assigned regions; making site visits/inspections

4 as required to gain ideas for sales development and improved customer service; traveling to

5 tradeshows or job sites when requested by management; attending on-site training at job sites to

6 develop an in-depth understanding of the system and how it functions; and other sales-related

7 duties as Octaform assigned from time to time.

8      35.     Further, upon becoming the General Manager of Octaform, Johnston also had the

9 responsibilities and accountability of the most senior and high-level executives in Octaform.  He

10 was responsible for managing all personnel including all sales personnel, company budgets and

11 financial reporting, business model and strategy, monitoring and promoting customer

12 relationships, identifying business opportunities and entering into agreements to promote sales

13 of Octaform products.  Johnston requested and reviewed technical drawings, as well as product

14 testing results.  Quite simply, Johnston was responsible for all such duties as required to carry

15 out the mandate of Octaform and achieve the goals established by Octaform's owner together

16 with Johnston.

17 **LOZANO-JOHNSTON'S EMPLOYMENT WITH OCTAFORM US**

18      36.     In or around August 2013, Lozano-Johnston became employed with Octaform

19 US as Warehouse/Logistics Coordinator.  This was a key position in the company with high

20 accountability.  Her duties included overseeing and fulfilling all Octaform orders, monitoring

21 and coordinating international shipping from the supplier to Octaform or Octaform's customers

22 and all points in between; estimating and billing shipping and related expenses; monitoring

23 payment and receivables; exercising judgment to determine the manner and mode of shipping;

24 the care and crating of the product for shipping, monitoring; arranging for and distributing all

25 Octaform inventory in warehouses located in North America and ensuring compliance with all

26 logistical requirements within Octaform

27      37.     In connection with her employment with Octaform US, Lozano-Johnston

28 executed a Proprietary Rights and Non-Disclosure Agreement acknowledging that she "has, will

HOWARD & HOWARD ATTORNEYS PLLC

VERIFIED COMPLAINT AND JURY DEMAND

have, or may have access to certain information pertaining to the technical, financial, and marketing aspects of the business of Octaform all of which constitutes confidential and proprietary information. . . ." Exhibit E ("<u>Lozano-Johnston NDA</u>").  This information included some or all of the following:

- technical information about research, development, products, manufacturing, inventions, designs, prototypes, techniques, processes, trade secrets, know-how, algorithms, programs, code, schematics and source documents;

- historic, current and projected financial information about sales, other revenues, costs, margins, expenses, profits or losses, taxes, income, assets, liabilities, shareholders' equity, and cash flow; and

- marketing information about trademarks and names, product descriptions, customers, suppliers, markets, marketing and distribution channels;

38.     Lozano-Johnston acknowledged "that all such Business Information is valuable and proprietary or confidential to Octaform and agree[d] . . . not [to] disclose the Business Information for any purpose other than purposes expressly authorized by Octaform." *Id.*

39.     In addition, Lozano-Johnston agreed, among other things, (a) to assign and give ownership to Octaform all intellectual property worked on or developed by her in the course of her employment for Octaform; and (b) to return to Octaform upon Octaform's request all "drawings, apparatus, sketches, designs, physical materials, prototypes, dies, samples, confidential information, and media upon which confidential information is stored or recorded."

### DIAZ'S EMPLOYMENT WITH OCTAFORM US

40.     In or around March 16, 2016, a few days after Defendants incorporated H-PAC, Diaz was hired by Johnston to work with Octaform US and manage accounts in the accounting department.  Her job duties included billing and invoicing suppliers and customers, monitoring accounts with suppliers and customers, creating accounting documents and following up on accounts.  Under the direction of Johnston, the focus of Diaz's role was expanded to include shipping and logistics, as well as research and development of a potential market for PVC products in South America, which was outside the scope of Octaform's business and not authorized by Octaform's president and Board.

HOWARD & HOWARD ATTORNEYS PLLC

41.     Upon information and belief, Johnston hired Diaz for the sole purpose of learning the confidential and proprietary trade secrets and other business information of Octaform to use in Defendants' business, H-PAC.

42.     In violation of Octaform company policy and protocol, Johnston did not have Diaz sign a confidentiality and nondisclosure agreement when she began employment with Octaform.

43.     Upon information and belief, Diaz did not have any accounting experience prior to Johnston hiring her to work for Octaform in the accounting department.

44.     During her employment with Octaform US, Diaz had access to Octaform's confidential and proprietary information including trade secrets and other intellectual property as necessary for Diaz to perform her job duties for Octaform.

45.     Diaz, Johnston, and Lozano-Johnston are longstanding friends whose relationship predates Diaz's time working with the Johnstons together at Octaform.

## DEFENDANTS FORM H-PAC AS A SHELL COMPANY IN NEVADA

46.     On March 11, 2016, while Johnston and Lozano-Johnston were still employed by Octaform US, and immediately before Diaz was employed by Octaform US, Defendants formed H-PAC, a Nevada Limited Liability Company with a principal place of business at 6275 S. Pearl Street, Suite 500, Las Vegas, NV 89120.

47.     H-PAC's corporate managers are listed as Diaz and Yu, and Diaz is the Registered Agent of H-PAC.  The registered address listed for Diaz is the residential address of Johnston and Lozano-Johnston, 95 E. Conn. Avenue, Las Vegas, NV 89183.

48.     As explained, Yu is Wang's daughter.  Wang is the President of Huajun and Chairman of its Board of Directors.

49.     Upon information and belief, and based on Octaform's investigation to date, although Johnston and Lozano-Johnston are not corporate officers of H-PAC, they financially benefit from, are directly involved with the day-to-day operations, and control the business operations of H-PAC.  In fact, it appears that Defendants set up H-PAC as a shell company to make it appear that Johnston and Lozano-Johnston are not involved in the wrongful conduct

11

VERIFIED COMPLAINT AND JURY DEMAND

alleged in this complaint. Moreover, it appears that Johnston is the mind, management, and face of the company as he answers phone calls directed to the business, directs and monitors activities and operations within H-PAC, emails and otherwise communicates for the company, and has appeared at trade shows as the principal party responsible for H-PAC as recently as late-September 2016.

## THE TERMINATION OF DEFENDANTS' EMPLOYMENT WITH OCTAFORM US

50. In the period immediately before his termination on May 24, 2016, Johnston informed Octaform US that he had accepted employment with its Chinese supplier, Huajun, and that he had accepted $100,000 USD from Wang as prepayment of his salary from Huajun.

51. Octaform engaged in amicable negotiations with Johnston in an effort to convince him to change his mind. However, Johnston did not change his mind, replying, "No, I'm a man of my word and I gave my word to Rusen Wang."

52. On May 24, 2016, Octaform terminated Johnston for cause pursuant to the Johnston Employment Agreement.

53. On June 1, 2016, Johnston executed an Employee Separation document and was paid all wages owed and vacation time accrued as an employee of Octaform US. Exhibit F ("Johnston Employee Separation").

54. In or around the same time, Lozano-Johnston and Diaz also resigned their employment with Octaform US. Octaform paid all amounts due to the employees on a timely basis.

## DEFENDANTS CONSPIRE WITH HUAJUN TO MISAPPROPRIATE OCTAFORM'S TRADE SECRETS AND TO UNLAWFULLY COMPETE WITH OCTAFORM

55. Prior to and after Defendants formed H-PAC, they individually and acting in concert with each other conspired with Wang and Huajun to misappropriate Octaform's trade secrets and to unlawfully compete with Octaform, effectively taking over Octaform's plastic liner product business. Among other meetings, Johnston and Wang are known to have met in Las Vegas, Nevada on or about August 12-13, 2015 to discuss Defendants' plans.

HOWARD & HOWARD ATTORNEYS PLLC

56.     Defendants Johnston, Lozano-Johnston and Diaz used the confidential, proprietary, and trade secret information they obtained from their employment with Octaform US to enter into a business relationship with Wang, Huajun and Yu, who also used the confidential, proprietary, and trade secret information obtained from Huajun's relationship with Octaform Canada, to effectively take over Octaform's plastic liner product business.

57.     Huajun and Wang, acting in concert with Defendants, participated in the following, non-exclusive conduct:

a.  misappropriated Octaform know-how and trade secrets for essentially all material elements of Octaform's industrial plastic liner business and product—including Octaform product formulations, engineering designs, die tools, material suppliers, business contacts, warehouse facilities, North American sales personnel, and Octaform customer lists;

b.  willfully took proprietary engineering design plans and testing analyses for industrial plastic liner product to create their "own" competing liner design plans and product (copying certain design plans so exactly so as to still include on them the original English words that the design plan drawings are the "sole property of Octaform" and cannot be reproduced "without the written permission of Octaform");

c.  illegally retained Octaform funds and die tool machinery in China in an effort to frustrate Octaform's product supply chain and business operations in North America while simultaneously offering replica plastic liner product to Octaform clients in North America;

d.  used digital images of Octaform product and another company's manufacturing facility to send unsolicited offers to Octaform clients for the sale of replica plastic liner product;

e.  contacted Defendants (while they were still employed with Octaform US), and others, to monetize the misappropriation of Octaform intellectual property through the formation of H-PAC, a shell company, in the United States;

f.  shipped to North America replica plastic liner product manufactured through the use of Octaform trade secrets and attempted to sell replica product to current Octaform clients;

g.  utilized Octaform warehouse contacts and at least one warehouse facility for the importation of competing replica plastic liner product;

HOWARD & HOWARD ATTORNEYS PLLC

HOWARD & HOWARD ATTORNEYS PLLC

h.  while under contract with Octaform Canada, conspired with Johnston to create a die for a 16" panel based on confidential proprietary information related to Octaform's 18" panel, further conspired with the Defendants not to accept orders for a 16" plastic liner panel, and then refused to provide Octaform the 16" die machinery or make new product so that Defendants could sell the replica plastic liner product directly to Octaform's client Westman Steel and others; and

i.  sold and are actively selling large quantities of 12", 16" and 18" Octaform replica plastic liner panel to Octaform's client Westman Steel and others.

58.  In short, Huajun and Wang, using Octaform's confidential and proprietary trade secrets, are creating and shipping Octaform replica product from China to Defendants. Defendants are then selling or consigning the product to customers, distributors and warehouses across the United States and Canada, including Octaform's customers.  Octaform's entire distribution process has effectively been unlawfully taken over through Huajun's, Wang's and Defendants' misappropriation, thus benefitting from the knowing misappropriation of Octaform's trade secrets and other intellectual property.

59.  In October 2015, while Johnston was still employed by Octaform US, Zi Li Fang ("Fang"), Octaform's product developer, created drawings for a 16" QuickLiner panel and simulations to test the product for internal Octaform purposes.  The drawings/simulations were sent to Francis Leung, an Octaform employee, and to Johnston.

60.  When Fang visited the Huajun plant and die maker in China in late October 2015, he observed a 16" die he assumed to be for Octaform, but was confused because he did not think it had been approved yet.  Fang tried to take a picture of the die at Huajun's plant but was prevented from doing so by a Huajun employee.  The employee instructed Fang that the die for the 16" panel belonged to Huajun or Wang, not to Octaform.

61.  When confronted by Fang, Johnston said that he had asked Wang to make the 16" die, even though this was not done for Octaform, or at Octaform's request, and despite Johnston's employment with Octaform US.  Johnston specifically told Fang that Wang had made the 16" die for Johnston, at Johnston's request.

62.  On or before February 3, 2016, Huajun commissioned Shaoxing Siwell Plastics Engineering Technology Co. Ltd., the die manufacturer that makes all of Octaform's dies, to

14

develop an 18" liner die that was not made for or at the request of Octaform and Huajun was issued a receipt for a die payment.  At the time, Wang and Huajun had given no formal notice to Octaform to terminate their business agreement and continued to manufacture product for Octaform.

63.     On May 31, 2016, seven days after Octaform US terminated Johnston for cause, Wang sent an email to one of Octaform's customer sales agents, Fred Slemko, referring to the 16" die stating, *"Yes, we are the manufacturer of the 16" PVC Panel for Octaform.  We are also the owner of the die as it is not owned by Octaform.  The former general manager of Octaform, Bruce Johnston, will represent Huajun Plastics for these transactions.  If you wish to purchase these 16" PVC Panels from us directly, you can contact Bruce at (702) 205-9658.  Looking forward to doing business with you."*

64.     On June, June 27, 2016, at least one container of 18" PVC panel product arrived in Savannah, Georgia from Huajun and another container of 18" PVC panel product arrived in Los Angeles, California from Huajun.  Since then, multiple containers of 16" and 18" PVC product derived from Octaform designs have arrived in the United States.

65.     The 16" and 18" PVC panel products wrongfully created by Wang, Huajun and Johnston using Octaform's confidential and proprietary trade secrets are a replica of Octaform's superior PVC panel product.

66.     Defendants, acting in concert with each other, Wang and Huajun, have misappropriated the very essence of Octaform's industrial plastic liner business—including its engineering designs, product formulations, know-how, die tools, suppliers, sales personnel, clients, warehouses, etc.—for their own personal, business, and financial gain.

67.     Defendants, acting in concert with each other, Wang and Huajun, have knowingly conspired and are actively conspiring to misappropriate Octaform's trade secrets and intellectual property and have received, possessed, used, sold, offered for sale, and otherwise benefitted from product knowingly derived from the misappropriation of Octaform's trade secrets and other intellectual property.

VERIFIED COMPLAINT AND JURY DEMAND

HOWARD & HOWARD ATTORNEYS PLLC

68. Octaform has demanded that Wang and Huajun return to Octaform all dies, tooling and other trade secrets belonging to Octaform. Wang and Huajun have refused. Johnston refused to assist Octaform in the recovery of its tools even while he was still on Octaform's payroll, due to his ongoing conspiracy with Wang, Huajun and the Defendants.

69. In addition, Octaform has demanded that Defendants cease and desist their participation in and benefiting from product knowingly derived from the misappropriation of Octaform's trade secrets and other intellectual property. Defendants have continued their wrongful actions.

70. On May 21, 2016 and May 22, 2016, Johnston reported to Octaform that Wang and Huajun would not return Octaform's dies, and that Johnston, Wang and Huajun intended to compete with Octaform by manufacturing Octaform's products and selling them. Wang told Johnston he was "not concerned about the legalities of the contract" that Wang and Huajun have with Octaform preventing the misappropriation and use of Octaform's trade secrets and plastic liner product.

71. Wang and Huajun have used Octaform's designs and research in order to create new dies and forms to compete with Octaform. Johnston has influenced and directed the specific dimensions and specifications of the products to be produced for the USA, Canadian, and other marketplaces.

72. Johnston, individually and in concert with Defendants, has also contacted and is working with Florida warehouse owner and salesmen Larry Westlake ("Westlake") and Steve Ehrenpreis ("Ehrenpreis") to receive product from Defendants, Wang and Huajun. Westlake and Ehrenpreis used to work for Octaform US as warehouse owner and sales representative, respectively, and Johnston worked with them on behalf of Octaform US during his employment with Octaform US. Johnston hired Ehrenpreis and maintained close contact with him following Johnston's termination.

73. Unbeknownst to Octaform, Wang and Huajun also filed for and obtained various Chinese patents based on Octaform's products by using Octaform's internationally published patent applications and photographs from Octaform's website. Wang and Huajun made false

16

claims in taking credit for Octaform's achievements that led to Wang winning an official government award in China.

## CAUSES OF ACTION

### COUNT I – MISAPPROPRIATION OF TRADE SECRETS
### UNDER THE DEFEND TRADE SECRETS ACT OF 2016 (18 U.S.C. § 1836(b)(1))
### (ALL DEFENDANTS)

74.     Octaform incorporates and realleges the foregoing paragraphs as if fully set forth herein.

75.     While employed by Octaform US, Defendants Johnston, Lozano-Johnston and Diaz obtained access to Octaform's confidential trade secret information and other intellectual property, including Octaform product formulations, engineering designs, die tools, material suppliers, business contacts, warehouse facilities, North American sales personnel, and customer lists.  Defendants Johnston, Lozano-Johnston and Diaz, individually and in concert with Wang and Huajun, stole Octaform's confidential trade secret information through improper means as described in detail above.

76.     Defendants Johnston, Lozano-Johnston and Diaz, and non-parties Wang and Huajun shared Octaform's confidential trade secret information and other intellectual property with Yu and with each other, and each of them knew or should have known that the trade secret information was acquired by the improper means described in detail above.

77.     Specifically, given the relationship between the Defendants, each of them knew or should have known that Octaform's confidential trade secret information and other intellectual property was derived through Johnston's, Lozano-Johnston's, and Huajun's/Wang's breach of their agreements with Octaform to keep such information secret and confidential.

78.     The trade secret information obtained by Defendants is related to Octaform's products that are used in or intended for use in, interstate or foreign commerce.  As stated above, Octaform sells its products throughout North America and globally, and the trade secret information obtained by Defendants relates to the sale of these products.

HOWARD & HOWARD ATTORNEYS PLLC

79.     Octaform considers its product formulations, engineering designs, die tools, material suppliers, business contacts, warehouse facilities, North American sales personnel, and customer lists to be confidential and proprietary trade secrets, and it has taken reasonable steps as part of its ongoing standard operating procedures to maintain the confidential nature of this information, including by entering into the agreements more fully described above.  Octaform does not disclose this information to the public; the information is a closely guarded secret, known only to the limited number of individuals engaged by Octaform.

80.     Defendants have utilized and are continuing to utilize Octaform's confidential, proprietary and trade secret information to solicit Octaform's existing and prospective customers.    In so doing, Defendants are maliciously, willfully and knowingly using misappropriated confidential, proprietary and trade secret information to their own advantage in direct competition with Octaform.

81.     As a result of Defendants' misappropriation and use of the confidential, proprietary and trade secret information, Defendants have violated the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836(b)(1).

82.     As a direct and proximate result of Defendants' violations of the Defend Trade Secrets Act of 2016, Octaform has sustained substantial damages in an amount that will be established at trial of this matter.

83.     Defendants' actions in converting and misappropriating, and knowingly using Octaform's converted and misappropriated confidential, proprietary and trade secret information for their own gain were willful, wanton, and malicious, and were taken with reckless disregard for Octaform's rights.

84.     Defendants' actions have caused and will continue to cause Octaform irreparable harm if not preliminarily and permanently enjoined.

85.     The trade secrets misappropriated by Defendants and their co-conspirators remain in their possession, custody or control.  Defendants have no right, interests or entitlement to such trade secrets and Octaform is entitled to their recovery.

86.     Octaform has no adequate remedy at law.

VERIFIED COMPLAINT AND JURY DEMAND

**COUNT II – TRADE SECRET MISAPPROPRIATION**
**UNDER NEVADA UNIFORM TRADE SECRET ACT**
**(NEV. REV. STAT. § 600A.101 *et seq.*)**
**(ALL DEFENDANTS)**

87.     Octaform incorporates and realleges the foregoing paragraphs as if fully set forth herein.

88.     Octaform has expended substantial time, resources, and expenses, to create, design, and develop product formulations, engineering designs, die tools, material suppliers, business contacts, warehouse facilities, North American sales personnel, and customer lists.

89.     Octaform considers its product formulations, engineering designs, die tools, material suppliers, business contacts, warehouse facilities, North American sales personnel, and customer lists to be confidential and proprietary trade secrets, and it has taken reasonable steps as part of its ongoing standard operating procedures to maintain the confidential nature of this information, including by entering into the agreements more fully described above.  Octaform does not disclose this information to the public; the information is a closely guarded secret, known only to the limited number of individuals engaged by Octaform.

90.     Octaform's product formulations, engineering designs, die tools, material suppliers, business contacts, warehouse facilities, North American sales personnel, and customer lists are trade secrets to Octaform and gave Octaform a competitive advantage over others in the industry.  Accordingly, the product formulations, engineering designs, die tools, material suppliers, business contacts, warehouse facilities, North American sales personnel, and customer lists constitute trade secrets of Octaform under common law and the Nevada Trade Secrets Act, Nev. Rev. Stat. § 600A.010 et seq.

91.     While employed by Octaform US, Defendants Johnston, Lozano-Johnston and Diaz obtained access to Octaform's confidential trade secret information and other intellectual property, including Octaform product formulations, engineering designs, die tools, material suppliers, business contacts, warehouse facilities, North American sales personnel, and customer lists.  Defendants Johnston, Lozano-Johnston and Diaz, individually and in concert

HOWARD & HOWARD ATTORNEYS PLLC

with Wang and Huajun, stole Octaform's confidential trade secret information through improper means as described in detail above.

92.    Defendants Johnston, Lozano-Johnston and Diaz, and non-parties Wang and Huajun shared Octaform's confidential trade secret information and other intellectual property with Yu and with each other, and each of them knew or should have known that the trade secret information was acquired by the improper means described in detail above.

93.    Specifically, given the relationship between the Defendants, each of them knew or should have known that Octaform's confidential trade secret information and other intellectual property was derived through Johnston's, Lozano-Johnston's, Diaz's and Huajun's/Wang's breach of their agreements with Octaform to keep such information secret and confidential.

94.    Having misappropriated Octaform's trade secrets and other valuable proprietary information, Defendants have already participated in manufacturing and importing into the United States and internationally, marketing, offering to sell, and obtaining orders in the United States and internationally for virtual imitations of Octaform's plastic liner product, including at a recently-concluded car wash trade show in Atlantic City, New Jersey in September 2016.

95.    Defendants' participation in the marketing, importing, offering for sale, and obtaining orders of virtual imitations of Octaform's plastic liner product has been achieved through the misappropriation of Octaform's trade secrets and other intellectual property and the knowing use of the misappropriated trade secrets.

96.    Defendants misappropriated, derived and used Octaform's trade secrets. Defendants' disclosure and use of Octaform's trade secrets constitute unauthorized misappropriation of Octaform's trade secrets. This has substantially and irreparably injured, and continues to injure, Octaform.

97.    The trade secrets misappropriated by Defendants remain in their possession, custody or control and the possession, custody or control of Defendants' co-conspirators. Defendants have no right, interests or entitlement to such trade secrets and Octaform is entitled to their recovery.

VERIFIED COMPLAINT AND JURY DEMAND

HOWARD & HOWARD ATTORNEYS PLLC

HOWARD & HOWARD ATTORNEYS PLLC

**COUNT III – CONVERSION**
**(ALL DEFENDANTS)**

98.     Octaform incorporates and realleges the foregoing paragraphs as if fully set forth herein.

99.     Defendants are in wrongful possession of Octaform's confidential, proprietary and trade secret information.

100.    Defendants have wrongfully asserted dominion or control over Octaform's confidential, proprietary and trade secret information in a manner inconsistent with Octaform's ownership and entitlement to such information.

101.    As a direct and proximate result of Defendants' conversion of Octaform's confidential, proprietary and trade secret information, Octaform has sustained substantial damages in an amount to be determined at trial.

102.    The value of Octaform's confidential, proprietary and trade secret information is in its exclusive use by Octaform and its employees to the derogation and exclusion of third parties.  By wrongfully asserting dominion or control over this information, Defendants have greatly diminished the monetary value of the information that Octaform has sought to protect.

**COUNT IV – TORTIOUS INTERFERENCE**
**(ALL DEFENDANTS)**

103.    Octaform incorporates and realleges the foregoing paragraphs as if fully set forth herein.

104.    Octaform has, for a long time, had contractual relationships and prospective contractual relationships with multiple third parties in North America.

105.    For example, Octaform had contractual relationships and prospective contractual relationships with, among numerous other third parties, Slemko and Westlake, as more fully described above.

106.    Defendants Johnston, Lozano-Johnston and Diaz had knowledge about Octaform's contractual and prospective contractual relationships based on their employment with Octaform.  To the extent Lozano-Johnston and Diaz did not know as much as Johnston,

1   upon information and belief, Johnston shared everything he knew with Lozano-Johnston (his

2   wife) and they collectively shared everything they knew with Diaz (their friend) in furtherance

3   of their H-PAC business.

4       107.   Defendant Yu had knowledge about Octaform's contractual and prospective

5   contractual relationships.  Upon information and belief, Wang shared specific information with

6   Yu (his daughter) about Octaform's contractual and prospective contractual relationships.  In

7   addition, upon information and belief, Johnston, Lozano-Johnston and Diaz shared specific

8   information about Octaform's contractual and prospective contractual relationships with Yu in

9   furtherance of their H-PAC business.  Yu also attended the majority of Octaform meetings held

10  in Vancouver, Canada, with her father, Wang, and participated in social events with Octaform in

11  China.   Yu observed the discussion about countless matters relating to quality issues,

12  confidentiality and design, as well as all general business development and relationship matters.

13  At times, Yu assisted in translation between Richardson and Wang during meetings and social

14  events.  Wang repeatedly maintained that the ultimate beneficiary of his efforts to develop the

15  business was his daughter.

16      108.   Defendants intended to harm Octaform through the misappropriation of

17  Octaform's trade secrets and other intellectual property to offer virtual replicas of Octaform's

18  plastic liner product to Octaform's customers and prospective customers.

19      109.   Defendants' actions were intentionally undertaken without justification and in an

20  effort to directly solicit Octaform's customers and prospective customers.

21      110.   As a result of Defendants' tortious interference, Octaform suffered substantial

22  damages and actual harm in an amount to be established at trial.

### COUNT V – UNFAIR COMPETITION (FALSE ADVERTISING) UNDER THE LANHAM ACT (15 U.S.C. § 1125) (ALL DEFENDANTS)

25      111.   Octaform incorporates and realleges the foregoing paragraphs as if fully set forth

26  herein.

HOWARD & HOWARD ATTORNEYS PLLC

22

HOWARD & HOWARD ATTORNEYS PLLC

112.   In connection with the operation of H-PAC, Defendants have made false and misleading statements of fact regarding H-PAC's EZ LINER product, which is essentially a replica of Octaform's plastic liner product.

113.   Defendants used digital images of Octaform product in brochures and on the H-PAC website to send unsolicited offers to Octaform clients for the sale of Defendants' EZ LINER product.

114.   Defendants' statements and advertisements used in sending unsolicited offers to Octaform's clients had the capacity to deceive and actually deceived a substantial segment of potential customers.

115.   Defendants' actions induced customers to believe that Defendants' products are manufactured, sold by, or otherwise associated with or authorized by Octaform.

116.   Multiple customers have contacted Octaform to inquire whether certain plastic liner product sold by Defendants was manufactured by Octaform or whether there has been a change of sales personnel, and they have informed Octaform that they want Octaform's product, not the replica product.

117.   Defendants' deceptive actions are material in that they are likely to influence consumers' purchasing decisions.

118.   Defendants sell the EZ LINER product in interstate commerce.

119.   As a result of Defendants' false advertising, Octaform suffered substantial damages in an amount to be established at trial.

## COUNT VI- UNJUST ENRICHMENT
### (ALL DEFENDANTS)

120.   Octaform incorporates and realleges the foregoing paragraphs as if fully set forth herein.

121.   By using Octaform intellectual property to advertise H-PAC product, including digital images of Octaform's plastic liner product in brochures and on the H-PAC website, without Octaform's permission, Octaform has conferred a benefit on Defendants.

122.    Defendants have appreciated the benefit as they have been able to use Octaform's digital images, without Octaform's permission, to sell H-PAC's replica EZ LINER product, which they would not have been able to do without falsely associating their product with Octaform's plastic liner product and by failing to declare their separation from Octaform.

123.    Defendants accepted and retained the benefit in the form of profits from the sale of its EZ LINER product, a virtual replica of Octaform's plastic liner product, without any express, written agreement with Octaform to use Octaform intellectual property.

124.    It would be inequitable for Defendants to retain the benefit of using Octaform's digital images to sell H-PAC's replica EZ LINER product without payment to Octaform.

## COUNT VII – CIVIL CONSPIRACY
### (NEV. REV. STAT. § 207.470)
### (ALL DEFENDANTS)

125.    Octaform incorporates and realleges the foregoing paragraphs as if fully set forth herein.

126.    Defendants' unlawful actions described in detail above consisted of a combination of two or more of them acting in concert with each other.

127.    Defendants intended to accomplish an unlawful objective for the purpose of harming Octaform—namely, Wang, supported by Johnston, maliciously and willfully retained Octaform's tools and dies, knowing that restricting Octaform's production capacity would cause significant financial distress and harm to Octaform's reputation, and would allow Defendants to gain market advantage in competition with Octaform. Wang had previously threatened to dump liner product in the US market if Octaform refused to grant exclusivity to Huajun and Wang for all Octaform's PVC production in China. Simply put, Defendants willfully and maliciously are attempting to unlawfully compete with Octaform in an attempt to completely take over Octaform's business through unlawful means prohibited by Nev. Rev. Stat. § 207.470.

128.    As a result of Defendants' civil conspiracy, Octaform suffered substantial damages in an amount to be established at trial, and is further entitled to the recovery of enhanced damages and attorneys' fees against the Defendants.

HOWARD & HOWARD ATTORNEYS PLLC

## COUNT VIII – DECLARATORY JUDGMENT
## (ALL DEFENDANTS)

129.    Octaform incorporates and realleges the foregoing paragraphs as if fully set forth herein.

130.    Defendants are not authorized to utilize Octaform's trade secrets and other intellectual property in connection with Defendants' business, products, or advertising.

131.    Octaform seeks a declaration that Defendants' continued use of Octaform's trade secrets and other intellectual property is in violation of Federal law and the law of the State of Nevada.

132.    This declaratory relief sought involves a real, imminent, and live controversy.

133.    Octaform's rights should be declared on an expedited basis and it should be declared that Defendants have no rights whatsoever to utilize Octaform's trade secrets and other intellectual property.

## IMMEDIATE AND IRREPARABLE INJURY

134.    Octaform incorporates and realleges the foregoing paragraphs as if fully set forth herein.

135.    Defendants' conduct described herein has caused and will continue to cause Octaform to suffer immediate and irreparable injury and damage.  This irreparable injury is actual and imminent and includes and arises from the improper utilization of Octaform's trade secrets and intellectual property to usurp Octaform's business opportunities, unfairly compete with Octaform to steal Octaform's business opportunities, and a likelihood of confusion, mistake, and deception of the public as to the origin of the products offered by Defendants.

136.    Defendants' continued improper and unlawful use of Octaform's trade secrets and other intellectual property threatens to erode and injure the goodwill inuring to Octaform because Octaform has no control over the nature and quality of Defendants' products and because Defendants are unfairly competing with Octaform using Octaform's trade secrets and intellectual property.

137.   Huajun and Wang have repeatedly failed to maintain contractual quality standards for product shipped to the USA.  Octaform has a real and justified concern that Wang will produce, and Johnston will sell, inferior quality product causing long lasting and potentially irreparable harm to Octaform's reputation as a leader in innovative quality products.

138.   Octaform is currently unable to ascertain the full extent of the monetary damages it has suffered as a result of the unlawful conduct of Defendants, and such damages will, in any event, be inadequate to fully compensate Octaform for the injury it will suffer from Defendants' continued conduct.

139.   Further immediate and irreparable injury and damage will result from the continued conduct of Defendants.  Octaform likely will not be able to ascertain the amount of compensation, if any, that could afford adequate relief for such continuing acts, and numerous judicial proceedings would be required.  Octaform therefore has no adequate remedy at law to compensate for its injury and damage resulting from Defendants' continued unlawful use of Octaform's trade secrets and other intellectual property.

## PRAYER FOR RELIEF

WHEREFORE, Octaform respectfully requests the following relief:

That this Court enter judgment against Defendants, finding Defendants, individually, jointly and severally liable, granting the following relief:

A.  On their misappropriation claims, Octaform requests:

1.   The entry of judgment in favor of Octaform, and against Defendants, finding Defendants jointly and severally liable in connection with the claims set forth herein;

2.   An award of damages adequate to compensate Octaform for the misappropriation of their trade secrets that has occurred, together with prejudgment interest from the date the misappropriation began, but in no event less than a reasonable royalty as provided by 18 U.S.C. § 1836(b)(3)(B)(ii) and (b)(3)(A)(iii);

3.   Increased damages as permitted under 18 U.S.C. § 1836(b)(3)(C);

HOWARD & HOWARD ATTORNEYS PLLC

4.   A finding that Defendants willfully and maliciously misappropriated and knowingly used and derived a benefit from Octaform's misappropriated trade secrets, and an award to Plaintiffs of their attorneys' fees and costs as provided by 18 U.S.C. § 1836(b)(3)(D);

5.   That Defendants, and their officers, agents, servants, employees and attorneys, and all persons in active concert or participation with them who receive actual notice of the Court's order, be enjoined preliminarily and permanently from:

   (a)   using, distributing, manufacturing, offering to sell or selling any item derived from or constituting, in whole or in part, any Octaform trade secrets;

   (b)   selling or offering to sell any product in a manner which creates a likelihood of confusion or which may deceive the public into believing that the source of such product is Octaform, or that such product is authorized or endorsed by Octaform in any way;

   (c)   offering to do any of the acts enjoined in subparagraphs (a) and (b) above;

   (d)   in any manner disclosing, infringing or contributing to or participating in the misappropriation or disclosure by others of any of Octaform's trade secrets, and from acting in concert with, inducing, aiding, or abetting others to infringe, misappropriate or disclose any of said trade secrets in any way; and

   (e)   engaging in further acts of trade secret misappropriation or unfair competition.

6.   The immediate surrender of any Octaform property or trade secrets, or any materials derived therefrom, such as dies, tooling, molds, drawings, specification, and all means of making or reproducing the same;

7.   That Defendants advise their customers and all those solicited to be their customers in writing, in a form suitable to Octaform that:

   (a)   Defendants have unlawfully used Octaform's property and trade secrets; and

   (b)   Defendants' products are not associated with Octaform and are not endorsed or approved by Octaform;

7.   That Defendants immediately destroy all knockoff or replica product;

VERIFIED COMPLAINT AND JURY DEMAND

HOWARD & HOWARD ATTORNEYS PLLC

8.   That Octaform have such other and further relief as the Court and/or a jury deems just and proper.

B.   On their conversion claim, Octaform requests:

1.   The entry of judgment in favor of Octaform, and against Defendants, finding Defendants jointly and severally liable in connection with the claims set forth herein;

2.   An award of damages adequate to compensate Octaform for the conversion that has occurred, together with prejudgment interest from the date the conversion began;

3.   That Defendants, and their officers, agents, servants, employees and attorneys, and all persons in active concert or participation with them who receive actual notice of the Court's order, be enjoined preliminarily and permanently from using, distributing, manufacturing, offering to sell or selling any item derived from or constituting, in whole or in part, any Octaform trade secrets that have been converted by Defendants for their own personal gain and from engaging in further acts of trade secret misappropriation or unfair competition;

4.   That Octaform have such other and further relief as the Court and/or a jury deems just and proper.

C.   On their tortious interference claim, Octaform requests:

1.   The entry of judgment in favor of Octaform, and against Defendants, finding Defendants jointly and severally liable in connection with the claims set forth herein;

2.   An award of damages adequate to compensate Octaform for the tortious interference that has occurred, together with prejudgment interest from the date the tortious interference began;

3.   That Defendants, and their officers, agents, servants, employees and attorneys, and all persons in active concert or participation with them who receive actual notice of the Court's order, be enjoined preliminarily and permanently from continuing to tortiously interfere with Octaform;

4.   That Octaform have such other and further relief as the Court and/or a jury deems just and proper.

D.   On their Lanham Act claim, Octaform requests:

VERIFIED COMPLAINT AND JURY DEMAND

1.   The entry of judgment in favor of Octaform, and against Defendants, finding Defendants jointly and severally liable in connection with the claims set forth herein;

2.   That Defendants, and their officers, agents, servants, employees and attorneys, and all persons in active concert or participation with them who receive actual notice of the Court's order, be enjoined preliminarily and permanently from:

    (a)    selling or offering to sell any product or service in a manner which creates a likelihood of confusion or which may deceive the public into believing that the source of such product or service is Octaform, or that such product or service is authorized or endorsed by Octaform in any way;

    (b)    using in connection with advertising, offering for sale or sale of any product any false designation, description or representation of the origin, nature, quality or association of such products; and

    (c)    further acts of deceptive trade practices and/or unfair competition in any manner whatsoever, including selling, offering to sell or otherwise or marketing or promoting their current products and future designs which have substantially the same overall image, appearance or look or that are imitations or copies of Octaform's plastic liner product.

3.   An order directing Defendants to deliver to Octaform all dies, tooling, drawings, molds, specifications, advertisements, circulars, brochures or other promotional and advertising items or materials for their sales, marketing and manufacture of Defendants' EZ LINER product that are copies of Octaform's plastic liner product;

4.   That Octaform be awarded compensatory damages in an amount to be determined at trial;

5.   That Octaform be awarded punitive damages arising from the willful and malicious acts of Defendants, in an amount to be determined at trial;

6.   That Octaform recover attorneys' fees and costs of suit incurred herein;

7.   That Octaform have such other and further relief as the Court and/or a jury deems just and proper.

E.  On their unjust enrichment claim, Octaform requests:

29

VERIFIED COMPLAINT AND JURY DEMAND

1.    The entry of judgment in favor of Octaform, and against Defendants, finding Defendants jointly and severally liable in connection with the claims set forth herein;

2.    An award of damages adequate to compensate Octaform for the unjust enrichment that has occurred, together with prejudgment interest;

3.    An order requiring Defendants to disgorge all benefits they have unjustly and inequitably retained;

4.    That Octaform have such other and further relief as the Court and/or a jury deems just and proper.

F.   On their civil conspiracy claim, Octaform requests:

1.    The entry of judgment in favor of Octaform, and against Defendants, finding Defendants jointly and severally liable in connection with the claims set forth herein;

2.    An award of damages adequate to compensate Octaform for the civil conspiracy that has occurred, together with prejudgment interest from the date the civil conspiracy began;

3.    Three times the actual damages sustained as set forth in Nev. Rev. Stat. § 207.470;

4.    That Octaform have such other and further relief as the Court and/or jury deems just and proper.

G.   On their declaratory judgment claim, Octaform requests:

1.    That the Court declare, on an expedited basis, that Defendants are not authorized to utilize Octaform's trade secrets and other intellectual property and that Defendants' continued use of Octaform's trade secrets and other intellectual property is in violation of Federal law and laws in the State of Nevada;

2.    That Octaform have such other and further relief as the Court and/or jury deems just and proper.

. . . .

. . . .

. . . .

. . . .

VERIFIED COMPLAINT AND JURY DEMAND

HOWARD & HOWARD ATTORNEYS PLLC

**JURY DEMAND**

A trial by jury is demanded on all issues triable to a jury in this case.

**VERIFICATION**

Pursuant to 28 U.S.C. § 1746, I, Dave Richardson, declare under penalty of perjury under the laws of the United States of America that the factual statements set forth above in this Verified Complaint are true and correct to the best of my information, knowledge and belief.

G. David Richardson
Chief Executive Officer
Octaform Systems Inc.

Dated: October **26**, 2016

Subscribed and sworn to before me
In the Province of British Columbia, Canada,
on this **26th** day of October, 2016



A Notary in the Province of
British Columbia, Canada

HOWARD & HOWARD ATTORNEYS PLLC

/s/ W. West Allen
W. WEST ALLEN (Nevada Bar No. 5566)
JAY YOUNG (Nevada Bar No. 5562)
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada  89169
Telephone: (702) 257-1483
Facsimile: (702) 567-1568

*Attorneys for Plaintiffs*
*Octaform Systems Inc.*
*Octaform Inc.*

4851-7858-7450, v. 5

31
VERIFIED COMPLAINT AND JURY DEMAND