UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| OCTAFORM SYSTEMS INC., et al.,<br><br>Plaintiffs,<br>v.<br>BRUCE JOHNSTON, et al.,<br><br>Defendants. | Case No. 2:16-cv-02500-APG-PAL<br><br>**ORDER** |

This order resolves the parties' multiple discovery disputes concerning their respective responses to written discovery requests that were outlined in the parties' Joint Status Report (ECF No. 65) and Exhibit A to plaintiffs' Emergency Motion to Extend Case Management Deadlines (ECF No. 80).

## **BACKGROUND**

### I.     **The Complaints and Procedural History**

Plaintiffs Octaform Systems Inc. and Octaform Inc. (collectively "Octaform") designed PVC forms and wall and ceiling liner systems. Octaform alleges that several former employees conspired with Octaform's Chinese manufacturer to misappropriate its designs and tools to form a new company, defendant H-PAC Plastics, LLC ("H-PAC") and to sell Octaform's product as H-PAC's own.

The initial Complaint (ECF No. 1) in this case was filed October 26, 2016. The individual defendant employees filed a Motion to Dismiss (ECF No. 16) which the district judge resolved in an Order (ECF No. 39) entered June 12, 2017 granting in part and denying in part the motion to dismiss and granting plaintiffs leave to amend. The individual defendants argued the entire complaint should be dismissed because Octaform did not join the manufacturer with whom they allegedly conspired. The individual defendants also argued that plaintiffs' tort claims were

precluded by Nevada's trade secret statute. The district judge denied the motion to dismiss the case on the grounds that Octaform failed to sue the Chinese manufacturer, Huajun, which defendants argued was a necessary party under Fed. R. Civ. P. 19. He found that complete relief could be afforded to the parties without joining the manufacturer, and that the defendants had not established that any rulings in this case would bind the manufacturer so that its interests might be in peril. With respect to Octaform's conversion, tortious interference, conspiracy, and unjust enrichment claims, the district judge granted the individual defendants' motion to dismiss finding their tort claims were not plausible because each of these claims was contingent on Octaform's claim that the defendants misappropriated trade secrets. He found the Nevada Uniform Trade Secrets Act ("NUTSA") "displaces conflicting tort, revisionary, and other … civil remedies for misappropriation of a trade secret." However, he granted Octaform leave to amend the complaint cautioning Octaform that if the amended complaint did not contain specific facts stating claims wholly independent from its allegation of trade secret misappropriation, he would dismiss those claims with prejudice.

Octaform filed a First Amended Complaint (ECF No. 41) on June 26, 2017, asserting claims for: (1) misappropriation of trade secrets under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836(b)(1) against all defendants; (2) trade secret misappropriation under the Nevada Uniform Trade Secret Act, NRS 600A.101 *et seq.*, against all defendants; (3) Unfair competition (false advertising) under the Lanham Act, 15 U.S.C. § 1125, against all defendants; (4) violation of the Nevada Deceptive Trade Practices Act, NRS 498.0915 *et seq.*, against all defendants; (5) conversion against all defendants; (6) tortious interference against all defendants; (7) unjust enrichment against all defendants; and (8) civil conspiracy against all defendants. In addition, the first amended complaint requests a declaratory judgment against all defendants, stating that defendants are not authorized to utilize Octaform's trade secrets or other intellectual property in connection with its business, products, or advertising, and that defendants' continued use of Octaform's trade secrets and other intellectual property is a violation of state and federal law.

The defendants filed Answers (ECF Nos. 43–47) and Counterclaims (ECF Nos. 48–51), and a Third Party Complaint (ECF No. 52) against Octaform and its president, David Richardson.

Generally, the defendants allege they did not misappropriate Octaform's trade secrets and have been maligned by Octaform and Richardson's false accusation of theft. The counterclaims and third-party complaint also contend Octaform breached employment agreements. Defendant Bruce Johnston claims that Richardson disclosed private medical information about him to others. The defendants' counterclaims and third-party claims seek a declaratory judgment regarding whether Octaform owns enforceable trade secrets. In Counts 2–10 of the counterclaims and third-party complaint, the defendants also asserted numerous claims based on alleged disparagement. In Counts 11–15, Johnston and defendant Alba Lozano-Johnston asserted various claims concerning their employment agreements. In Count 17, Johnston asserted a claims against Richardson for invasion of privacy for disclosing to others his private medical facts and prescription medication. Count 16 alleges that Richardson was Octaform's alter ego.

In an Order (ECF No. 87) entered March 13, 2018, the district judge granted Octaform's motion to dismiss all counterclaims and third-party claims except a portion of the declaratory relief claim and invasion of privacy claim. He found the claims should be dismissed because the claims were barred by Nevada's absolute privilege for defamatory statements made during the course of judicial and quasi-judicial proceedings. With respect to the employee contract claims, the district judge found that the parties were required to arbitrate claims related to the employment contracts, and that Octaform had not waived its arbitration rights by bringing this lawsuit.

With respect to the declaratory relief requested, the district judge found that the defendants' request for a declaration that Octaform has no protectable trade secrets was not redundant of other claims or defendants' affirmative defenses. He further found that a declaration that Octaform has no enforceable trade secrets in the design formula for its PVC wall and ceiling liners would clarify the parties' legal disputes so that defendants know their legal rights. He dismissed the alter ego count finding the defendants did not allege sufficient facts to plausibly allege Richardson is Octaform's alter ego. Finally, he allowed the invasion of privacy claim Richardson asserted in his third-party complaint to proceed finding that Johnson's claim was sufficiently related to the claims asserted in the lawsuit. Counts 2–10 and 12 were dismissed with prejudice as barred by the absolute litigation privilege. Counts 1 and 13–15 were dismissed without prejudice to pursue those

3

claims in arbitration. The requests for declaratory relief in subparts (b) and (c) were dismissed as redundant. The alter ego allegations in Count 16 were dismissed with leave to amend, and the motion to dismiss was denied as to subpart (a) of Count I seeking a declaratory judgment. The motion to dismiss the invasion of privacy claim in Count 17 was also denied.

The district judge directed the parties to meet and confer "regarding how to proceed in this case vis-à-vis the arbitration proceeding." He granted the parties leave to file a motion to stay if they could not agree about whether this case should be stayed pending resolution of the arbitration.

On July 19, 2018, the parties submitted a Stipulation (ECF No. 89) requesting a discovery status conference. In the stipulation the parties advised the court that they had met and conferred as directed by Judge Gordon's Order (ECF No. 87). The parties requested a discovery status conference to update the court regarding the parties' respective positions concerning: (1) discovery that remains to be completed in this action; (2) the timing to complete the remaining discovery; (3) the status of arbitration proceedings pending in Canada that may affect this action; and (4) staying this action.

The court granted their request and conducted a hearing on August 6, 2018. At the discovery status hearing, counsel for plaintiffs advised the court that two arbitrations had been proceeding in Canada. The first arbitration involved disputes between Octaform and the individual defendants concerning their employment contracts. The second arbitration involved Octaform's disputes with the Chinese manufacturer Huajun and its principal, Mr. Wang. The arbitrations had been set, but both had been "pushed back" and would be continued.

Counsel for plaintiffs argued that the parties in this case should proceed to finalize discovery. Plaintiffs' counsel needs an order deciding the discovery disputes outlined in Exhibit A to plaintiffs' Emergency Motion to Extend the Case Management Deadlines (ECF No. 80) and also discussed in the parties' Joint Status Report (ECF No. 65). Once defendants produce any additional documents the court compels, plaintiff intends to take the deposition of Mr. and Mrs. Johnston, a Rule 30(b)(6) designee for ALG Consulting, and defendants' experts. Counsel for plaintiffs may also want to take the deposition of non-party Town & Country who was selling product for defendant H-PAC allegedly representing it was Octaform's. Plaintiffs would also like

to depose Frances Leung, a financial IT specialist who is a resident of Canada. His deposition is also sought in the pending Florida litigation and in arbitration proceedings. However, it is unknown whether Mr. Leung will cooperate in having his deposition taken. As he is a resident of Canada, the parties have no meaningful way to compel his appearance at deposition in this case.

Counsel for the defendants advised the court that substantial discovery has been conducted in the related Florida litigation and in arbitration proceedings. The plaintiffs obtained a great deal of information by issuing numerous non-party subpoena duces tecum helpful to this case as well as the Florida action.

Both sides wish to exchange information produced in this case and in the pending Canadian arbitration proceedings to avoid duplication of effort. However, an agreement needs to be reached with the parties in the arbitration proceedings and their counsel to ensure that the information is treated confidentially in accordance with the protective order entered in this case.

Counsel for defendants advised the court that he believed his client could produce any documents the court orders produced as a result of the parties' pending discovery disputes within 30 days. Both sides agreed that the remaining discovery in this case could likely be completed 60 days from the parties' receipt of any documents the court orders produced. The court indicated a written order would enter, and set a further status conference for September 10, 2018, requiring the parties to file a joint status report by September 6, 2018, outlining their progress in discussing scheduling depositions, cross-designating discovery produced in the arbitrations and in the Florida proceeding, and a status of their efforts to exchange documents in the arbitration proceedings with appropriate agreements with counsel and the parties in those proceedings.

**II.     The Parties' Discovery Disputes**

Octaform contends the defendants have failed to participate in discovery because they have refused to produce: (a) H-PAC sales and financial documents; (b) documents related to H-PAC's formation; and (c) emails and other communications between defendants and approximately 18 non-parties that Octaform alleges are directly related to its claims. Octaform attached as Exhibit A to the joint status report (ECF No. 65) a chart listing discovery disputes regarding 87 document

requests and several interrogatories, and asked the court to compel defendants to respond to each of these requests.

Defendants oppose the order compelling them to produce the discovery in dispute arguing they have already responded to more than 150 document requests, in addition to dozens of interrogatories and request for admissions propounded by Octaform. Defendants also contend that the discovery requests at issue are overly broad, seek information that is not relevant, and information that constitutes its confidential, proprietary and business information. Defendants also argue they are entitled to invoke Nevada's statutory privilege, codified in NRS 49.325, which allows a party to refuse to disclose and prevent other persons from disclosing its trade secrets.

Octaform responds that in a federal case involving a federal question the privilege set forth in NRS 49.325 does not apply and that federal privilege law applies. Additionally, plaintiffs point out that the court has entered the parties' stipulated Protective Order (ECF No. 25), which adequately protects their respective trade secrets.

Defendants also resist producing any additional discovery until Octaform identifies its allegedly misappropriated trade secrets with "reasonable particularity," citing a decision in this district, *Switch Commcn's Grp. v. Ballard*, 2:11-cv-0285-KJD-GWF, 2012 WL 2342929 (D. Nev. June 19, 2012). Octaform responds that the district judge allowed their claims to proceed, and defendants have filed their answers. Octaform also argues it has identified and articulated the trade secrets it alleges defendants have misappropriated with reasonable particularity sufficient for discovery to proceed at this time. Because the district judge allowed the claims to proceed and defendants filed their answers, defendants' objection to proceeding with discovery based on the *Switch* decision lacks merit.

During oral argument, counsel for Octaform represented that it had produced the documents referred to on page 15 of the joint status report identifying its alleged trade secrets. Specifically, Octaform represented it had produced documents showing: (1) engineering designs; (2) communications and documents with testing companies related to the development and testing of its line of products; (3) documents related to the development and payment for die tools; and (4) numerous emails between Octaform and Huajun and Wang regarding the development and

testing of the line of products to ensure the materials and tensile strength met North American standards.

Defendants also seek an order compelling Octaform to supplement certain interrogatories and responses to requests for production, including an order requiring Octaform to produce all non-privileged documents related to the arbitration pending between Octaform and Huajun and Wang in Canada.

Given the large number of disputes and the sheer number of discovery requests and responses in dispute in the parties' joint status report the court required the parties to submit proposed orders. The parties complied and submitted their competing Proposed Orders (ECF Nos. 72, 73). Octaform's proposed form of order did not request that the court compel further responses to interrogatories initially in dispute. The defendants' proposed order would require Octaform to first identify their allegedly misappropriated trade secrets before they could obtain any further written or document discovery from the defendants.

Having reviewed and considered the voluminous papers and exhibits supporting the parties' respective positions,

**IT IS ORDERED** that the court will compel the parties to serve supplemental responses to the discovery requests as narrowed below by **September 5, 2018**.

Defendants shall serve supplemental responses to the following requests for documents in their possession, custody or control:

### Communications and Documents Concerning H-PAC

1. Communications between any of the defendants and Huajun Plastic Building Material Co. Ltd. ("Huajun") and/or Rusen Wang ("Wang"), from January 2015 to the present, concerning the formation of H-PAC and related to the manufacture and/or sale of PVC liner panels (H-PAC RFP No. 1, Johnston RFP No. 1, Diaz RFP No. 8 and 9, Yu RFP No. 7);

2. Communications between any of the defendants, from January 2015 to the present, concerning the formation of H-PAC and related to the manufacture and/or sale of PVC

liner panels (H-PAC RFP No. 6, Johnston RFP No. 6, H-PAL RFP No. 7, Johnston RFP No. 7, Yu RFP No. 10);

3. Communications between any of the defendants and Francis Leung, from January 2015 to the present, concerning the formation of H-PAC and related to the manufacture and/or sale of PVC liner panels (Johnston RFP No. 17);

4. Communications between any of the defendants and current and/or former Octaform employees, including Margaret Fong-Harandi and Jose Palma, from January 2015 to the present, concerning the formation of H-PAC and related to the manufacture and/or sale of PVC liner panels (Johnston RFP No. 18, Lozano Johnston RFP No. 15, Diaz RFP No. 17, Yu RFP No. 17);

5. Communications between any of the defendants and Larry Westlake, from January 2015 to the present, concerning the first time that Mr. Westlake was informed that Johnston, Lozano Johnston and/or Diaz were no longer working at Octaform and/or were associated with H-PAC (H-PAC RFP No. 17, Johnston RFP No. 20, Lozano Johnston RFP No. 16, Diaz RFP No. 18);

6. Communications between any of the defendants and Steve Ehrenpreis, from January 2015 to the present, concerning the first time that Mr. Ehrenpreis was informed that Johnston, Lozano Johnston and/or Diaz were no longer working at Octaform and/or were associated with H-PAC (H-PAC RFP No. 18, Johnston RFP No. 21, Lozano Johnston RFP No. 17, Diaz RFP No. 19);

7. Communications between any of the defendants and John White, from January 2015 to the present, concerning the first time that Mr. White was informed that Johnston, Lozano Johnston and/or Diaz were no longer working at Octaform and/or were associated with H-PAC (H-PAC RFP No. 19, Johnston RFP No. 22, Diaz RFP No. 20);

8. Communications between any of the defendants and Fred Slemko, from January 2015 to the present, concerning the first time that Mr. Slemko was informed that Johnston, Lozano Johnston and/or Diaz were no longer working at Octaform and/or were associated with H-PAC (H-PAC RFP No. 20, Johnston RFP No. 23, Diaz RFP No. 21);

9. Communications between any of the defendants and Len Warland, from January 2015 to the present, concerning the first time that Mr. Warland was informed that Johnston, Lozano Johnston and/or Diaz were no longer working at Octaform and/or were associated with H-PAC (H-PAC RFP No. 21, Johnston RFP No. 24, Diaz RFP No. 22);

10. Communications between any of the defendants and Klaus Santrau, from January 2015 to the present, concerning the first time that Mr. Santrau was informed that Johnston, Lozano Johnston and/or Diaz were no longer working at Octaform and/or were associated with H-PAC (H-PAC RFP No. 22, Johnston RFP No. 25, Diaz RFP No. 23);

11. Communications between any of the defendants and Tom Langmeier, from January 2015 to the present, concerning the first time that Mr. Langmeier was informed that Johnston, Lozano Johnston and/or Diaz were no longer working at Octaform and/or were associated with H-PAC (H-PAC RFP No. 23, Johnston RFP No. 26, Lozano Johnston RFP No. 22, Diaz RFP No. 24);

12. Communications between any of the defendants and Daniel Tiberini, from January 2015 to the present, concerning the first time that Mr. Tiberini was informed that Johnston, Lozano Johnston and/or Diaz were no longer working at Octaform and/or were associated with H-PAC (H-PAC RFP No. 24, Johnston RFP No. 27, Diaz RFP No. 25);

13. Communications between any of the defendants and Travis Malkoske, from January 2015 to the present, concerning the first time that Mr. Malkoske was informed that Johnston, Lozano Johnston and/or Diaz were no longer working at Octaform and/or were associated with H-PAC (H-PAC RFP No. 25, Johnston RFP No. 28, Diaz RFP No. 26);

14. Communications between any of the defendants and Buddy Starnes, from January 2015 to the present, concerning the first time that Mr. Starnes was informed that Johnston, Lozano Johnston and/or Diaz were no longer working at Octaform and/or were associated with H-PAC (H-PAC RFP No. 26, Johnston RFP No. 29, Diaz RFP No. 27);

15. Communications between any of the defendants and Leo Apperloo, from January 2015 to the present, concerning the first time that Mr. Apperloo was informed that Johnston, Lozano Johnston and/or Diaz were no longer working at Octaform and/or were associated with H-PAC (H-PAC RFP No. 29, Johnston RFP No. 32, Diaz RFP No. 30);

16. Communications between any of the defendants and Scott Cribby, from January 2015 to the present, concerning the first time that Mr. Cribby was informed that Johnston, Lozano Johnston and/or Diaz were no longer working at Octaform and/or were associated with H-PAC (H-PAC RFP No. 27, Diaz RFP No. 28);

17. Communications between any of the defendants and Zeey Josman, from January 2015 to the present, concerning the first time that Mr. Josman was informed that Johnston, Lozano Johnston and/or Diaz were no longer working at Octaform and/or were associated with H-PAC (H-PAC RFP No. 28, Diaz RFP No. 29);

**Documents Concerning Defendants' PVC Liner Panels**

18. Specifications and other documents sufficient to show the design of PCV liner panel sold and/or distributed by H-PAC, including 12", 16", 18", "Wave" or "Hat" PVC panels, and the dies used to manufacture the panels, including information sufficient to show when and from whom the dies were ordered (H-PAC RFP Nos. 10, 11, 12 and 13);

19. Documents concerning any testing of the material properties of H-PAC's PVC liner panel products including, without limitation, for tensile strength, smoke resistance, flame resistance, wall thickness, and/or shatter resistance (H-PAC RFP No. 3);

20. Documents concerning H-PAC's quality control standards, procedures, and protocols for the PVC liner panel products it has sold (H-PAC FRP No. 4);

21. Documents concerning H-PAC's business plans for its PVC liner panel business (H-PAC RFP No. 8).

**Documents Concerning Defendants' Sales of PVC Liner Panels**

22. Purchase orders and invoices related to all sales of PVC liner panel products by H-PAC since its inception to the present date (H-PAC RFP No. 37);

23. Financial statements and accounting records related to all sales of PVC liner panel products by H-PAC since its inception to the present date, including but not limited to, profit & loss statements, gross revenue statements, gross revenue reports, income statements, balance sheets, ledgers, and records of account (H-PAC RFP No. 38);

24. Income tax returns H-PAC submitted to the Internal Revenue Service related to the sales of PVC liner panel products for the income tax years 2016 through the present, with relevant Schedules showing gross sales, costs of sales, and profit or loss (H-PAC RFP No. 39);

25. Documents related to shipments or deliveries of PVC liner panel products any of the defendants has received from Huajun since H-PAC's inception to the present date, including but not limited to, importation documents from the United States Customs and Border Protection and similar agencies, and documents detailing the inventory and/or quantity of PVC liner panel products (H-PAC RFP No. 40, Johnston RFP No. 41, Lozano Johnston RFP No. 35, Diaz RFP No. 37, Yu RFP No. 37);

26. Documents related to shipments or deliveries of PVC liner panel products any of the defendants has made to any distributor, salesman, or customer since H-PAC's inception to the present date, including but not limited to, documents detailing the inventory and/or quantity of PVC liner product(s) sent by H-PAC (H-PAC RFP No. 41, Johnston RFP No. 42, Lozano Johnston RFP No. 36, Diaz RFP No. 38, Yu RFP No. 38)

27. Documents sufficient to show all payments, salary, financial benefits, cash or other remuneration in any form that H-PAC has paid to Bruce Johnston, or to any other party for Bruce Johnston's financial benefit, since its inception to the present date, related to sales of PVC liner panel products (H-PAC RFP No. 43)

28. Documents sufficient to show all payments, salary, financial benefits, cash or other remuneration in any form that H-PAC has paid to Lozano Johnston, or to any other party for Lozano Johnston's financial benefit, since its inception to the present date, related to sales of PVC liner panel products (H-PAC RFP No. 44);

29. Documents sufficient to show all payments, salary, financial benefits, cash or other remuneration in any form that H-PAC has paid to Jun Yu, or to any other party for Jun Yu's financial benefit, since its inception to the present date, related to sales of PVC liner panel products (H-PAC RFP No. 45);

30. Documents sufficient to show all payments, salary, financial benefits, cash or other remuneration in any form that H-PAC has paid to Carolina Diaz, or to any other party for Carolina Diaz's financial benefit, since its inception to the present date, related to sales of PVC liner panel products (H-PAC RFP No. 46);

31. A list of all customers that H-Pac has sold PVC liner panel products to since its inception to the present date (H-PAC RFP No. 47).

Octaform shall supplement its responses to requests for production of documents in its care, custody or control as follows:

1. Documents sufficient to show all costs paid by Octaform for the development of its engineering plans, including underlying accounting summaries supporting its claim of development costs.

2. Documents evidencing all efforts by Octaform to keep its alleged trade secrets and engineering designs, product formulations, die tools, materials suppliers, warehouse facilities, customer lists, business contact, know-how, and North American sales personnel confidential. This includes all agreements restricting disclosure of information.

3. Documents sufficient to identify all business contacts Octaform claims amount to a trade secret misappropriated by the defendants. Octaform responded to H-PAC document request number 28 by stating "See all documents produced by the parties in this matter." This response is insufficient. Octaform must either separately produce the documents responsive to this request or identify where they have been previously produced with specificity, e.g., by Bates No.

4. Documents sufficient to show the "know-how" Octaform claims is a trade secret misappropriated by the defendants. Octaform responded to request number 32 by

stating "See all documents produced by the parties in this matter." This response is insufficient. Octaform must either separately produce documents responsive to this request or identify where they have previously been produced with specificity, e.g., by Bates No.

5. All non-privileged discovery documents relating to the arbitration pending between Octaform and Huajun/Wang in Canada.

6. All non-privileged discovery documents relating to the arbitration proceeding pending in Canada between Octaform and Johnston and Lozano.

7. Documents responsive to H-PAC document request nos. 46, 56, and 78. Octaform responded to these requests by stating "See all documents produced by the parties in this matter." This is insufficient. Octaform must either separately produce documents responsive to these requests or identify with specificity where they have been previously produced with specificity, e.g., by Bates No.

**IT IS FURTHER ORDERED**:

1. The parties shall have until **September 7, 2018** to supplement their discovery responses in conformance with this order.

2. Any requests for relief not specifically addressed in this order is **DENIED.**

DATED this 17th day of August, 2018.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE