UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| OCTAFORM SYSTEMS, INC., *et al.*, | Case No. 2:16-cv-02500-APG-EJY |
| Plaintiffs, | **ORDER** |
| v. | |
| BRUCE JOHNSTON, *et al.*, | |
| Defendants. | |

Pending before the Court are three motions all involving a single issue—whether Howard & Howard ("H&H") is disqualified from its continued representation of Plaintiffs. The first filed motion is Plaintiffs' Motion for Declaration of Proper Screening of Lateral Attorney Joanna Myers. The Court considered this Motion along with the Response and Reply. ECF Nos. 164, 168, and 169. The second filed motion is Defendants' Motion to Disqualify Counsel (the "Motion for Disqualification" or "Motion to Disqualify") (ECF No. 167), which the Court considered along with Plaintiffs' Response (ECF No. 170), and Defendants' Reply (ECF No. 172). The third filed motion is Plaintiffs' Motion to Strike Defendants' Motion for Disqualification (ECF No. 171) to which Defendants responded and Plaintiffs replied. ECF Nos. 173, 174.[1]

**I.     BACKGROUND**

    A.    <u>Events Leading to the Instant Motion Practice</u>.

Underlying this case are Plaintiffs' allegations that Defendants misappropriated their trade secrets. ECF No. 1 at 17-20. The case is partially stayed because the outcome of a pending arbitration between the parties may dispose of all issues raised in the instant dispute. ECF No. 165. The partial stay was partially lifted on March 1, 2023 to allow the instant motions to be filed and adjudicated. ECF No. 177.

---

[1] The Motion to Strike (ECF No. 171) is identical to Plaintiffs' Response to the Motion for Disqualification (ECF No. 170).

H&H first appeared as counsel for Plaintiffs when this lawsuit was filed. ECF No. 1. Similarly, Dickinson Wright PLLC ("DW") first appeared for Defendants when DW filed Defendants' responsive pleading. ECF No. 16. The current dispute between the two law firms concerns the disqualification of H&H because Joanna Myers ("Myers"), a former DW attorney, has, since late 2022, been employed as an associate for H&H. Nearly all the facts leading to the instant motion practice are undisputed.

Myers was employed as an associate attorney for DW from June 2015 to March 2018. ECF No. 164-2 at 3. About 12 months into her employment by DW Myers joined the DW team representing Defendants. ECF No. 167 at 3. Myers first appeared on the docket on November 30, 2016 when she was identified as counsel for Defendants in a Stipulation for Extension of Time for Defendants. ECF No. 11. Myers withdrew from representation of Defendants in March 2018 in conjunction with her resignation from DW to join the firm of Holley Driggs where she was employed until October 2022—a total of approximately four and one-half years. ECF Nos. 86, 164-2 at 3-4. Myers accepted employment with H&H on September 26, 2022 as an associate. ECF No. 164 at 5.

On September 25, 2022, apparently one day before Myers accepted employment with H&H, H&H screened Myers from accessing any documents relating to the instant litigation either in print or electronically. *Id.* at 7. On October 25, 2022, two days before Myers commenced work at H&H, H&H sent a screening memo to Myers and all H&H employees (attorneys and non-attorneys) informing them of Myers' pending employment and explaining she was to be completely walled off from the instant case. *Id.* at 6-7.

On October 28, 2022, H&H emailed DW advising DW that Myers was working for H&H and explaining she was screened from all information and matters related to this case as is required under Nevada's ethics rules. ECF No. 167 at 4. A month later, DW responded to H&H stating (1) Myers was "substantially involved" in Defendants' representation while working for DW, and (2) Defendants did not waive the existing conflict under Nevada Rule of Professional Conduct ("NRPC") 1.9. *Id.* Because DW concluded screening of Myers, even if done properly, did not prevent the imputation of conflict to H&H, DW concluded H&H was required to withdraw as

counsel for Defendants under NRPC 1.10(e). *Id.* Attempts were made to resolve this dispute, but no agreement was reached. *Id.*

B. H&H's Position.

H&H argues that longstanding Nevada law and custom, supported in a recent decision by the Nevada Supreme Court, demonstrates that the Nevada Rules of Professional Conduct allow law firms to screen lateral hires to avoid imputed disqualification, and the only question for the Court is whether screening of Myers was adequate to avoid imputed disqualification in this case.[2] ECF No. 164 at 9-13. H&H contends it should not be disqualified because: (1) disqualification is a harsh remedy; (2) DW does not dispute the adequacy of the screening and notice procedures H&H used when hiring Myers; (3) Myers is five years removed from any representation of Defendants; (4) Myers' role when employed by DW was that of an associate; and (5) Plaintiffs desire that H&H remain as their counsel of record. *Id.* at 9, 13.

H&H argues Myers was primarily involved in discovery while employed by DW and Myers, who had not been employed by DW or worked on the present dispute for four and a half years at the time disqualification was sought, remembers little of the case, confirming in her declaration that while assigned to this case she worked mainly on researching case law for the initial pleadings and on document review. ECF Nos. 169 at 7, 164-2 ¶ 10. H&H, who was present at depositions taken four and a half years ago, states Myers attended but played no role in questioning or defending witnesses deposed. ECF No. 169 at 7. H&H contends these tasks were performed solely by DW partner John L. Krieger ("Krieger"). *Id.* H&H also argues that DW has neither filed a declaration nor attributed any statement to Defendants supporting DW's contention that Myers played a substantial role in handling their defense. *Id.* Myers' secondary and relatively minor role in the

---

[2] H&H cites *Nelson v. Eighth Judicial District Court in & for Cnty. of Clark*, 521 P.3d 1179 (Nev. 2022). ECF No. 164 at 9. In *Nelson*, the Nevada Supreme Court held a paralegal, who worked for the plaintiff's counsel and subsequently went to work for defense counsel, performed "substantial work" on the case while employed by plaintiff's counsel's firm. *Id.* at 1184. Discussing nonlawyer imputation of disqualification, the Nevada Supreme Court stated: "mere involvement—even extensive involvement—does not warrant automatic disqualification." *Id.* The Court, however, did also state: "We note that Nevada's revision of the model rules of professional conduct in 2006 explicitly permits screening of an attorney, not just nonlawyers, to cure a conflict of interest in certain circumstances. *See* RPC 1.10(e); RPC 1.12(c)." *Id.* at 1183, n.3. After analysis of facts pertinent to its decision, the court found the trial court did not abuse its discretion when it did not disqualify defendant's counsel as proper screening procedures were implemented and there was no evidence that information gained during the paralegal's employment for plaintiff's counsel was disclosed to defense counsel. *Id.* at 1184-85.

case, combined with a nearly five year lapse between Myers' employment by DW and her employment by H&H, together with the size of H&H (140 attorneys) and comprehensive screening of Myers that started before she began employment by H&H, supports the conclusion that H&H is ethically permitted to continue as counsel for Plaintiffs. *Id.*

H&H says DW seeks H&H's disqualification solely for tactical reasons, something the Court should closely scrutinize. *Id.* at 5. H&H also correctly points out that this case is substantively stayed because an ongoing arbitration will likely resolve all or most issues raised before the Court. *Id.* at 5. H&H contends DW has not identified how it will be prejudiced if H&H remains as Plaintiffs' counsel, and there are no allegations that Myers has shared any confidential information with anyone at H&H. *Id.*

If the Court is inclined to review more information relating to Myers' representation of Defendants while at DW, H&H asks the Court to conduct an *in camera* review of DW's bills that will allow an independent evaluation of Myers' involvement while an associate at DW. *Id.* at 8. In support of the requested *in camera* review, H&H cites the discrepancy between DW's November 29, 2022 letter to H&H, in which DW demanded H&H withdraw as Plaintiff's counsel citing Myers 620 hours billed, and DW's representation to the Court that Myers spent 878 hours on the case. *Id. citing* ECF Nos. 164-9 at 2, 169 at 8. H&H also cites Krieger's Declaration (ECF No. 167-1) arguing it fails to segregate the time spent by Myers on the various tasks identified such as pleadings, discovery, depositions, correspondence, and in client meetings. ECF No. 169 at 8. Because of this asserted lack of specificity in Krieger's Declaration, H&H contends an *in camera* review of the billing statements is potentially warranted. *Id.*

C.   DW's Argument.

DW contends no matter the screening procedures used by H&H, Nevada law is clear that if an attorney had substantial involvement in a matter that disqualifies that attorney under NRPC 1.9(a), the law firm by which the attorney is employed is also disqualified under NRPC 1.10(e). ECF No. 167 at 2. DW says this is exactly what happened here. *Id.* DW states as fact that Myers' role in representing Defendants was direct and substantial. *Id.* at 9.

1 DW argues Myers was "solely responsible" for preparing the initial analysis of Defendants' potential claims and defenses, and reviewed all documents produced by the parties in the case. *Id.* at 3. DW points to billing records as demonstrating Myers' 878 total hours spent working on behalf of Defendants, including the specific categories of tasks described by Krieger in his Declaration, such as drafting pleadings, handling production of documents and responses in the discovery process, preparing for and attending depositions, participating in strategy conferences, and meeting multiple times with Defendants. *Id.* at 3-4 *citing* ECF No. 167-1 ¶¶ 7a-7e. DW argues Myers' purported failure to recall the details of her work on the instant case is insufficient to avoid the presumption that she received confidential information relating to the case. ECF No. 168 at 8.

DW concludes the conjunctive language in NRPC 1.10(e)(1)-(3), together with Myers' substantial role as counsel for Defendants, requires disqualification of H&H. ECF No. 167 at 5. Nonetheless, DW states that if the Court believes it needs to review its billing statements to better determine whether disqualification is required, DW has no objection. ECF No. 172 at 7-8.

## II. DISCUSSION

### A. DW's Motion for Disqualification is Denied.

Federal courts apply state law when deciding whether an attorney or law firm should be disqualified. *Stevens v. Wal-Mart Stores, Inc.*, Case No. 2:17-cv-00970-JCM-PAL, 2018 WL 2766876, at *7 (D. Nev. June 8, 2018) (internal citation omitted). United States District Court for the District of Nevada Local Rule IA 11-7(a) states, in relevant part, that "[a]n attorney admitted to practice under any of these rules must adhere to the standards of conduct prescribed by the Model Rules of Professional Conduct as adopted and amended from time to time by the Supreme Court of Nevada, except as these standards may be modified by this court."

Disqualification of counsel or a firm is required when there "exists "(1) a clear violation of the professional rules of conduct; (2) that affects the public view of the judicial system or the integrity of the court; and (3) it is serious enough to outweigh the parties' interests in counsel of their choice." *Id. citing Kalinauskas v. Wong*, 808 F.Supp. 1469, 1472 (D. Nev. 1992); *Optyl Eyewear Fashion Intern. v. Style Cos.*, 760 F.2d 1045, 1049 (9th Cir. 1985); *In re Coordinated Pretrial Proceedings, Etc.*, 658 F.2d 1355, 1360-61 (9th Cir. 1981). The moving party has the burden of

establishing the "ethical violation or other factual predicate upon which the motion depends." *Id*. (internal citation omitted). "Given the seriousness of the matter, the movant has a high standard of proof to meet in order to prove that counsel should be disqualified." *Shahroki v. Harter*, Case No. 2:21-cv-01126-RFB-NJK, 2021 WL 4981565, at *2 (D. Nev. Oct. 26, 2021) (internal quotation marks and citations omitted).[3]

When considering a motion to disqualify counsel the Court must "weigh the prejudices that the parties will suffer based on the district court's decision, consider the public interest in the administration of justice, and discourage the use of such motions for purposes of harassment and delay." *Nevada Yellow Cab Corp. v. Eighth Judicial District Ct.*, 152 P.3d 737, 742-43 (Nev. 2007) *citing Brown v. Eighth Jud. Dist. Ct.*, 14 P.3d 1266, 1270 (Nev. 2000). If the Court finds an ethical violation, it has broad discretion to determine whether disqualification or a lesser sanction is warranted. *Stevens*, 2018 WL 2766876, at *7 *citing Hernandez v. Guglielmo*, 796 F.Supp.2d 1285, 1290 (D. Nev. 2011); *Yellow Cab*, 152 P.3d at 743. The District of Nevada recognizes disqualification as "a drastic sanction … that should be imposed only after … careful consideration of the client's right to be represented by the counsel of … [its] choice, and the nature and extent of the ethical violation." *Id*. (internal citations omitted).

NRPC 1.9(a) states that a conflict arises when the party seeking disqualification establishes "(1) that it had an attorney-client relationship with the lawyer, (2) that the former matter and the current matter are substantially related, and (3) that the parties are adverse." *Rebel Communications, LLC v. Virgin Valley Water Dist.*, Case No. 2:10-cv-00513-LRH-GWF, 2011 WL 677308, at *10 (D. Nev. Feb. 15, 2011), *citing Yellow Cab*, 152 P.3d at 741. Under Rule 1.9, the former client's consent can obviate a conflict of interest. *Id*. Consent was not provided in this case. ECF No. 167 at 2, n.1. There is no dispute that, individually, Myers has a conflict under NRPC 1.9(a); however, this does not answer the question of whether H&H is also disqualified from representing Plaintiffs.

---

[3] The Court notes that other courts within the Ninth Circuit have taken similar approaches regarding the seriousness of the disqualification of a party's attorney and/or law firm and the high level of scrutiny that must be applied to such requests. *See CWT Canada II Limited P'ship v. Bridges*, Case No. CV-16-02577-PHX-GMS, 2017 WL 3534977, at *2 (D. Ariz. Aug. 17, 2017) ("[B]ecause of the 'great prejudice often associated with an enforced change of counsel, courts applying these standards have granted disqualification only when the moving party has demonstrated substantial and irreparable harm growing out of the ethical violation.'"), *quoting Complaint of Korea Shipping Corp.*, 621 F. Supp. 164, 169 (D. Alaska 1985).

Conflicts arising under Rule 1.9 may be imputed to the conflicted lawyer's law firm under NRPC 1.10(a), which states: "While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.9, or 2.2, *unless* the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm." (Emphasis added.)  Further, NRPC 1.10(e) permits screening of lateral attorney hires to prevent imputed disqualification if all three of the following conditions are met: (1) the disqualified lawyer must not have had "a substantial role in or primary responsibility for the matter that causes the disqualification under Rule 1.9"; (2) the disqualified lawyer must be "timely screened from any participation in the matter" and "apportioned no part of the fee therefrom"; and (3) written notice must be "promptly given to any affected former client to enable it to ascertain compliance with the provisions of this Rule." *Lemus v. Olaveson*, Case No. 2:14-cv-01381-JCM-NJK, 2016 WL 2930699, at *2 (D. Nev. May 19, 2016).

In this case, there is no dispute concerning the screening H&H undertook before and upon hiring Myers. ECF No. 168 at 5. There is also no dispute that H&H gave prompt notice to DW. *Id.* at 5; *see also* ECF No. 164-8. However, the parties dispute whether Myers had a substantial role in or primary responsibility for representing Defendants during her time with DW.

The Court thoroughly reviewed the history of this litigation and the documents provided by the parties to gain an informed understanding of Myers' involvement in the case while she was employed by DW. The Court notes the following:

- On November 30, 2016, Defendants submitted their first filing in this case, a Stipulation for Extension of Time to respond to Plaintiffs' Complaint. ECF No. 11. Myers' name, bar number, and email address were listed below Krieger's as the attorneys appearing on behalf of Defendants. *Id.* at 2. Between this first appearance by Myers and her withdrawal from the case on February 27, 2018 (ECF No. 86), there were 29 filings on behalf of Defendants. ECF Nos. 11, 16, 18, 20, 27, 29, 32, 36, 43-47, 51-53, 55-59, 63, 65-66, 73-74, 76, 78, 82. Myers signed one filing that was ultimately withdrawn. ECF Nos. 76, 77. The remaining 28 filings were signed by Krieger.

- On June 8, 2017, Myers appeared before the Court, along with Krieger, at a Motion Hearing concerning an Emergency Motion for Injunctive Relief. ECF No. 37. Myers did not speak at the hearing. ECF No. 38.

7

- On August 29, 2017, Myers appeared at a Status Conference to discuss discovery issues. ECF No. 70. Myers did not speak at the conference. ECF No. 71.
- In Myers' January 4, 2023 Declaration she states:

> While I was at Dickinson I worked on the above captioned matter, *Octaform Systems, Inc. et al v. Johnston et al*, Case No. 2:16-cv-02500-APG-EJY [the "Octaform Matter"]. John Krieger was the lead litigator on the case. My recollection is that the Dickinson team on the Octaform Matter consisted of at least 2-3 other partners outside the Las Vegas Office, Krieger, and myself. I had the role of an associate on the file. Given that it was almost five years ago, I don't recall the specifics, but I believe I drafted general research memos on the new federal Defend Trade Secrets Act of 2016. I have no recollection of doing so, but I may have created initial drafts or researched case law for pleadings and motions. I do recall doing a lot of document review and sorting of documents responsive to discovery requests. I believe there were tens of thousands of documents and that much of my time billed was related to document/discovery tasks. I recall … supervising the client's review of documents that were designated Highly Confidential, which involved me sitting and watching the client to ensure no documents were copied or removed. Beginning in the summer of 2016 through late 2017, my mother was going through chemotherapy, and I was frequently traveling from Las Vegas to Missouri. During that time Krieger complained that I did not make myself available enough to work on the Octaform Matter and that my availability was sporadic. I have no confidential information of the Defendants in my possession or memory.

ECF No. 164-2 ¶¶ 4-14.

- In Krieger's Declaration, he states:

> Ms. Myers worked with me from 'day one' on the case. She was solely responsible for preparing an analysis of the potential claims and defenses, as well as digesting and evaluating all client documents. In fact, Ms. Myers and I worked together to develop the anticipated defenses in the case … [Myers] served as 'second chair' to me on the case … [and] charged 878 hours of time, which representation consisted of the following:[4]
>
> a. Pleadings: Ms. Myers was instrumental in drafting the counterclaims and the several pleadings filed in support of Defendants' claims when they were challenged by Plaintiffs; the motion for injunctive relief and protective order when Plaintiffs began sending around letters and copies of the lawsuit to H-PAC's customers prior to and/or during an important trade show; as well as numerous discovery disputes that were addressed with the Court.
>
> b. Discovery: Ms. Myers' primary responsibility was to review, catalogue, and understand all of the documentation produced by Defendants, as well as Plaintiffs, in the case, which involved tens of thousands of documents. Based upon her review and understanding of the documentation, we plotted Defendants' defense and counterclaims. Ms. Myers knew the documents better than any person who worked on the team at DW. She took the key role of preparing objections and responses to written discovery propounded upon each Defendant, which was complicated. More importantly, Ms. Myers was tasked with addressing discovery disputes, including

---

[4] The Court understands there is a discrepancy between the number of hours billed by Myers stated by Krieger in his Declaration (878) and the number of hours (620) stated in his November 29, 2022 letter to H&H demanding it withdraw as Plaintiffs' counsel. ECF Nos. 167-1 ¶ 7, 164-9 at 2.

8

identifying Octaform's production deficiencies, evaluating responsive documents, and drafting arguments and legal analysis regarding discovery disputes.

c. Depositions: Ms. Myers assisted me with all of the depositions involving the named parties. She prepared deposition outlines for me to use in connection with Octaform's principals, assisted in identifying relevant documents that needed to be addressed by each deponent, helped prepare Defendants for their depositions, and was present for all depositions involving Octaform's principals and consulted with me on strategy throughout those depositions.

d. Correspondence: Ms. Myers was copied on all email correspondence I had with H&H during the case. Moreover, she was copied on a substantial amount of email correspondence between the clients and me. She and I had numerous conferences with each other regarding those communications.

e. Client Meetings: Ms. Myers had numerous meetings with the clients, namely Bruce Johnston, Alba Johnston, and Carolina Diaz. Ms. Myers had numerous telephone conversations with Mr. Johnston regarding key documents and facts surrounding key documents.

ECF No. 167-1 ¶¶ 4, 7a-7e.

There is relatively little case law in this District or the Nevada Supreme Court establishing the criteria for determining when an attorney is properly classified as having "primary responsibility" or a "substantial role" in a case. While the holding in *Gonzales v. Shotgun Nevada Investments, LLC*, Case No. 2:15-cv-00915-RCJ-VPC, 2016 WL 4548675 (D. Nev. Aug. 31, 2016), on which Defendants rely, provides some guidance, the holding fails to mention or discuss the Nevada Supreme Court decision in *Yellow Cab*, *supra*, 152 P.3d 737.

More specifically, the court in *Gonzales* ruled on a motion to disqualify an attorney who previously represented the plaintiff in a related case, as well as the law firm in which he was currently employed then serving as defense counsel in the case before the court. 2016 WL 4548675 at **2-3. The court noted the work of the attorney when representing the plaintiff included his active preparation for and defense of the plaintiff's deposition, possession of privileged information related to plaintiff's case, in-depth knowledge of the disputes at issue in the case, and attendance at meetings where case strategy was discussed. *Id.* at *3. The court ultimately found the attorney was personally disqualified because he had a "direct" and, therefore, "substantial" role in the plaintiff's

representation under NRPC 1.10(e)(1) despite the attorney's statements that he was not exposed to "client confidences" when representing the now-adverse party. *Id*. at *4.[5]

The court also found that the attorney's new law firm was disqualified under NPRC 1.10(e)(1). *Id.* at *5. Important for this Court is the analysis of the firm's disqualification, which is slim. The court stated: (1) the firm employing the plaintiff's former counsel "did not give Plaintiff written notice of the potential conflict before undertaking representation of Defendants"; and (2) "[e]ven assuming a verbal communication could qualify under appropriate circumstances, however, because [the attorney's] role was substantial, screening is not permitted." *Id*.

The failure of the *Gonzales* decision to discuss *Yellow Cab* cannot be overlooked as the Nevada Supreme Court stated "a district court ***must*** undertake a balancing test in determining whether disqualification is warranted in a particular situation …" 152 P.3d at 742-43 (emphasis added). This required "balancing test" includes weighing prejudice arising from the court's decision, "the public interest in the administration of justice," and whether the motion to disqualify is being used "for purposes of harassment and delay." *Id*. at 743. It is this mandatory requirement the Court takes into consideration—"the delicate and sometimes difficult task of balancing competing interests"—together with the broad discretion the Nevada Supreme Court recognized (*id*.), that leads the Court to the decision here.

As the court did in *Gonzales*, this Court finds Myers' role in representing Defendants as an associate with DW was substantial.[6] Myers admits she was significantly involved in the initial phase of this case. Myers drafted pleadings, researched applicable law, and was heavily engaged in the discovery process. Krieger states Myers was instrumental in formulating Defendants' initial case strategy during the early days of the dispute. Krieger also states Myers billed a significant number of hours relating to her involvement in this case. Myers level of involvement and tasks described demonstrate her role concerned matters that were important, essential, and material to Defendants'

---

[5] The court noted the phrase "substantial role" was not defined by the Nevada Supreme Court, but using the definition provided in Black's Law Dictionary, the Court understood the words to mean "[o]f, relating to, or involving substance ... [r]eal and not imaginary ... [i]mportant, essential, and material ...." *Id.*, *citing* Black's Law Dictionary 1656 (10th ed. 2014). The court also noted the "Nevada's Standing Committee on Ethics and Personal Responsibility has implied that substantial role means direct role." *Id. citing* Formal Op. No. 39, at 6 (internal quote marks omitted).

[6] Because DW does not argue Myers had primary responsibility for representation of Defendants when employed by the firm as an associate, the Court does not discuss this potential basis for disqualification.

10

case.  Based on the foregoing, and NRPC 1.10(e)(1), the Court finds Myers' involvement was "substantial" when involved in the representation of Defendants while employed by DW.

Moreover, as explained above, this finding does not end the Court's analysis.  In *Bock-Kasminoff v. Walmart, Inc.*, the Court considered a motion to disqualify where the plaintiff accused defense counsel of failing to provide timely written notice of a conflict of interest under NRPC 1.10(e)(3).  Case No. 2:20-cv-00949-JAD-EJY, 2021 WL 8650490, at *2 (D. Nev. Aug. 30, 2021). The Court found that defense counsel had, in fact, violated NRPC 1.10(e)(3) by failing to alert plaintiff's counsel that it had screened a conflicted attorney from any participation in the case.  *Id.* at *3.  However, the Court found this failure "[was] not so great a violation that it would warrant removing [defense counsel]… from continuing its representation of [defendant]… in this matter." *Id.*  The Court supported its conclusion by citing statements made under oath by other attorneys and professionals at the law firm representing the defendant that no unethical behavior, including the sharing of confidential information, had occurred.  *Id.*

The Court finds the reasoning in *Bock-Kasminoff*, which applied the principles established in *Yellow Cab*, is properly applied to this case.  While there is a violation of NRPC 1.10(e)(1) based on Myers' substantial role in representing Defendants as an associate at DW, Myers last worked for DW in February 2018 and was first employed by H&H in October 2022 when she was completely walled off from this dispute.  Further, Myers never took or defended a single deposition, let alone a primary party deposition.  Myers never argued before the court and was a signatory on only one of 29 filed submissions.  Myers' role was one of supporting Krieger, the attorney with primary responsibility for representation of Defendants, and handling discovery matters which is not unusual for an associate.

Further, precedent establishes a client's desire for existing counsel to remain as the client's representative is a critical factor in a court's analysis when confronted with a disqualification motion. *Stevens*, 2018 WL 2766876, at *7.  There is also nothing presented to the Court suggesting, let alone demonstrating, that Myers shared or will in the future share any confidential information DW believes she has with her colleagues at H&H.  Myers, and all H&H attorneys, are officers of the Court and must demonstrate candor and openness to the Court.  NRPC 3.3.  Nothing offered by DW

11

suggests there is any reason for the Court to find the representations made are unworthy of credence. The Court finds nothing presented suggests H&H is ignoring the serious consequences Myers and H&H may face if there is a knowing misrepresentation to the Court. In sum, exercising the Court's broad discretion in matters of attorney and law firm disqualification, the Court finds the violation of NRPC 1.10(e)(1) is not serious enough to outweigh Defendants' interests in counsel of its choice.

Indeed, disqualification would be an extreme and unnecessary sanction here. If H&H is disqualified, new counsel would need to be sourced and significant time would be required for that counsel to become fully familiar with the long history of this dispute. A substitution of counsel would impose unnecessary fees and potential costs on Plaintiffs, as well as delay for Defendants. These effects outweigh the unsupported concern that Myers has shared or will share confidential information with H&H.

Moreover, upon the resolution of the instant Motions, this case is again fully stayed pending the outcome of an arbitration proceeding ongoing in Canada in which H&H is not involved. Each of the parties is represented by separate counsel in that arbitration, and the outcome of those proceedings may resolve all or the majority of the claims between the parties pending before the Court. Removing Plaintiffs' counsel, given that Myers commenced employment by H&H in October of last year, with no demonstration of prejudice since that date, and in light of the significant screening put in place by H&H, is unsupported by all factors the Court must consider.

Applying the high standard Plaintiffs must meet to demonstrate disqualification is required and the scrutiny the Court must bring to the Motion, the Court finds DW fails to demonstrate disqualification is required or appropriate in this case.

        B.      <u>H&H's Motion for Declaration of Proper Screening is Granted</u>.

"[T]he consideration of the adequacy of screening is within the sound discretion of the district court…; however, the district court must justify its determination as to the adequacy of the screening in a written order with specific findings of fact and conclusions of law." *Ryan's Express v. Amador Stage Lines*, 279 P.3d 166, 172 (Nev. 2012). A review of DW' response to H&H's Motion for Declaration of Proper Screening (ECF No. 168), along with its Motion for Disqualification (ECF No. 167) and subsequent reply (ECF No. 172), reveals DW does not contest

the adequacy of the screening process administered by H&H. H&H's affirmative acts to screen Myers commenced before her employment and continued into her employment with a memorandum to all staff and attorneys with the firm. There is nothing inadequate about what H&H did as supported by, if nothing else, the lack of DW's attack on the process.

Under NRPC 1.10(e)(2), the Court finds the screening of Myers implemented by H&H to be adequate and, therefore, grants H&H's Motion for Declaration of Proper Screening.

C.      H&H's Motion to Strike is Denied.

The H&H Motion to Strike (ECF No. 171) is identical to its response to DW's Motion to Disqualify (ECF No. 170). H&H asks the Court to strike DW's Motion for Disqualification. ECF No. 170 at 2. H&H argues DW did not need to file the Motion to Disqualify, as it is duplicative of its response to H&H's Motion for Declaration, thus resulting in increased party costs and the unnecessary use of judicial resources. *Id.* H&H also accuses the motion practice by DW as part of a pattern of delay that includes the arbitration proceedings in which the parties are currently involved. *Id.* H&H moves the Court to exercise its inherent authority to strike DW's Motion to Disqualify. *Id.* at 3. DW opposes this request arguing that although the nucleus of fact is the same in the two Motions, the parties are seeking different forms of relief (a declaration versus a disqualification). ECF No. 173 at 2.

There are two sources of authority federal courts access when striking a pleading. *Jones v. Skolnik*, No. Case 3:10-cv-00162-LRH-VPC, 2015 WL 685228, at *2 (D. Nev. Feb. 18, 2015). Under Federal Rule of Civil Procedure 12(f) "[t]he court may strike from a pleading ... any redundant, immaterial, impertinent, or scandalous matter." However, Rule 12(f) does not apply here. The second source of authority is inherent arising from the Court's power "over the administration of its business." *Jones*, 2015 WL 685228, at *2 (internal citation omitted).

Motions to strike under inherent powers are wholly discretionary. *Almy v. Davis*, Case No. 2:12-cv-00129-JCM-VCF, 2014 WL 773813, at **4–5 (D. Nev. Feb. 25, 2014). The Court finds the exercise of its inherent authority to strike DW's Motion to Disqualify is improper under the totality of arguments and issues presented.

### III. ORDER

IT IS HEREBY ORDERED that Plaintiffs' Motion for Declaration of Proper Screening of Lateral Attorney Joanna Myers (ECF No. 164) is GRANTED.

IT IS FURTHER ORDERED that Defendants' Motion to Disqualify Counsel (ECF No. 167) is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Strike (ECF No. 171) is DENIED.

DATED this 25th day of May, 2023.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE